[Sac. No. 3173.    In Bank.—December 19, 1921.]

BESSIE   BISINGER,   Respondent,   v.   SACRAMENTO
    LODGE No. 6, BENEVOLENT AND PROTECTIVE
    ORDER OF ELKS, Appellant.

[1] NEGLIGENCE—ELEVATOR ACCIDENT—REVERSAL ON APPEAL.—In view
    of section 4½ of article VI of the constitution, the judgment in
    favor of the plaintiff in an action for personal injuries sustained
    while attempting to enter an elevator on the premises of the de-
    fendant will not be reversed on appeal for alleged errors relating
    to the right of the plaintiff to recover, where it can be said as
    a matter of law from the record that the operator was guilty of
    negligence and that the defendant was liable therefor.

[2] ID.—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS.—In an action for
    personal injuries sustained while attempting to enter an elevator,
    instructions withdrawing the defense of contributory negligence
    from the consideration of the jury were not erroneous where the
    proximate cause of the injury was not, as pleaded by defendant,
    the entry of the elevator while in motion, but the negligence of
    the operator in the operation of the elevator after the entry and
    fall of the plaintiff to the elevator floor.

[3] ID.—JUDGMENT NOT EXCESSIVE.—A judgment for $28,191.91 in an
    action for personal injuries sustained in an elevator accident can-
    not be said to be excessive as a matter of law, where at the time
    of the trial, more than two years after the accident, the plaintiff
    was still able to get about only by the use of a wheel-chair, and
    her physician testified that one of her limbs was permanently in-
    jured, but that at some time she might be able to walk with the
    aid of a cane.

[4] ID.—TRIAL — ARGUMENT — DISCRETION.—Where, after it was stipu-
    lated that both parties should have an hour in which to argue the
    case, the defendant, without previous notice to the plaintiff,
    waived argument, and thus took plaintiff by surprise, the court, in
    the exercise of a sound discretion, properly allowed the plaintiff
    to make further argument.

[5] ID.—OPERATION OF ELEVATOR—TESTIMONY OF PLAINTIFF—PHYSICAL
    IMPOSSIBILITY—JUDICIAL NOTICE.—Judicial notice cannot be taken
    of the truth or falsity of the plaintiff's testimony as to the physi-
    cal impossibility to have run the elevator after the accident as
    described by the witness.

3.   Excessiveness of verdicts in actions for personal injuries other
than death, notes, Ann. Cas. 1913A, 1361; L. R. A. 1915F, 30.

APPEAL from a judgment of the Superior Court of Sacramento County.   Chas. O. Busick, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Butler & Van Dyke, Ben P. Tabor, Irving D. Gibson and J. W. S. Butler for Appellant.

O. F. Meldon for Respondent.

WILBUR, J.—The facts are thus stated by the appellant: "This is an appeal of defendant, Sacramento Lodge No. 6, Benevolent and Protective Order of Elks, from a judgment upon a verdict in favor of plaintiff for damages for personal injuries sustained by her on June 22, 1918, while attempting to enter an elevator in the basement of defendant's building in Sacramento, and alleged to have been received through the negligence of an elevator operator employed by defendant. A jury returned a verdict for $39,975, but afterward, upon an order of the trial court that unless the sum of $11,783.09 be remitted from the judgment, a new trial would be granted on the sole ground that the verdict was excessive, plaintiff by stipulation remitted that amount.   As reduced by stipulation the actual amount of the judgment, from which this appeal was taken, is therefore $28,191.91.

"STATEMENT OF FACTS.

"At the time of her injury plaintiff was a tenant of twenty-four rooms on the third and fourth floors of a building owned by defendant and known as the Elks' Building. Plaintiff had become such tenant by assignment of a written lease made by defendant to one Mrs. M. Brown on May 31, 1911.   The term of the lease had expired prior to plaintiff's injury but plaintiff continued to hold over and occupied the premises under the same tenancy and was in such occupancy at the time of her injury.

"Defendant gave its written consent to the assignment of the lease to plaintiff and coincidentally with the assignment of the lease, on January 6, 1915, Mrs. Brown, the predecessor of plaintiff, executed to her a bill of sale of 'all the furniture and household goods contained in those twenty-four (24) rooms and halls connected therewith' described in the original lease.   The bill of sale makes reference to the lease

'for the purpose of description and location of the rooms and building where the said furniture and household goods are situated.' Afterward, on February 24, 1916, plaintiff also executed to defendant, as security for her performance of the lease, a chattel mortgage embracing 'all of the upholstery, furniture and household goods,' etc., contained in the twenty-four rooms on the third and fourth floors of defendant's building, 'during the continuance of that certain lease agreement . . . for those certain premises consisting of the twenty-four rooms on the third and fourth. floors of the said Elks' Building, which is hereinbefore particularly described . . . '

"The building in which plaintiff was tenant and where she was injured consists of four floors and a basement, or including the roof, a portion of which is used by defendant for its own purposes, five floors. An ordinary passenger elevator and shaft runs from the basement to the roof. The first or ground floor is occupied by stores and the lobby or entrance to the upper floors. The lodge and club rooms of defendant occupy the whole of the second floor. The third and fourth. floors consist of offices and rooms rented to various tenants, including plaintiff. Practically the only use of the elevator is to carry persons from the entrance or lobby of the building on the first or ground floor to the upper floors. The elevator, however, can be taken to the basement floor of the building. There is a light-well in the center of the building over a part of the rooms on the fourth floor included in plaintiff's tenancy.

"Plaintiff was injured about 7 o'clock in the evening, as she was attempting to enter the elevator from the basement floor after she had gone to the basement of her own accord and for her own purpose to satisfy her curiosity as to the reason that water would not run on the roof. Plaintiff testified that her maid had previously gone up on the roof to sprinkle the roof and the light-well from a hose attached to a faucet on the roof, for the purpose of cooling the rooms occupied by her tenants on the fourth. floor. Having been informed by the maid that the water would not run from the hose, plaintiff telephoned to one Ward, defendant's janitor, who was then alone in the clubroom of defendant on the second floor, concerning the failure of the water to run on the roof and asked him to see to it. Ward responded

that he could not do so just at that time as he was alone, but that he would see to it later, as soon as someone came to relieve him. Plaintiff then asked Ward the location of the faucet or valve in the basement connected with the water-pipe that ran to the roof and went herself to the basement in the elevator, examined the faucet, and in attempting to enter the elevator from the basement on her return tripped on the edge of the floor of the elevator, fell and was injured, plaintiff alleges, through the negligence of the elevator oper-ator.

"According to the testimony of her surgeon, plaintiff sustained a severe crush of the left leg, above the ankle, with a compound fracture of the tibia."

The respondent, in stating the facts, adds the following:

"In order to reach the basement, respondent signaled for the elevator, and was carried therein to the basement floor. The elevator being at the time under the control of, and operated by, an employee of appellant. After respondent had completed her mission she returned to the point where the elevator could be taken on return to her own apartments in the building on the fourth floor thereof. The usual means of ingress and egress to and from the elevator, and device for signaling the elevator, were provided for at the basement floor.

"Respondent signaled for the elevator, in other words, respondent rang the bell provided for the purpose, in re-sponse to which the elevator was brought to the basement. The operator stopped the elevator some distance above the floor, and then, after lowering it some more, opened the door for respondent to enter. According to plaintiff's version of what then happened, the operator, just as respondent stepped into the elevator, started it suddenly upward, throw-ing respondent off her balance and causing her to fall upon the floor of the elevator with her left foot extending beyond the edge of the elevator floor. The elevator continuing in its ascent, respondent's left foot was caught between the floor of the elevator and the casing of the first floor of the build-ing, crushing and breaking the tibia and fibula of respond-ent's left leg just above the ankle. The operator then ran the elevator up to the fourth floor and back to the basement several times, the respondent still lying upon the floor, un-able to rise, suffering intense pain and her foot hanging by

the skin and stretched tendons under the floor of the elevator. Upon one of these obviously needless and uncalled for passages of the elevator up and down the elevator shaft, respondent, in her agony, changed her position, and her right foot was also caught, as the left had been, and the toes thereof were crushed and broken.''

The only dispute in the testimony is as to the manner in which plaintiff was thrown to the floor. Plaintiff testified that after she entered the elevator it started with a sudden jerk, which threw her to the floor in a sitting posture, with her left foot extending beyond the edge of the elevator. The elevator-man, J. W. Allen, testified that he had stopped the elevator slightly above the basement floor and that plaintiff started to step in the elevator just as he started to lower, and that plaintiff caught her foot under the elevator floor and stumbled into the elevator with her foot extending beyond the edge; that he saw her lying on the floor of the elevator with her foot extending beyond the edge of the elevator. The testimony of the elevator-man was given by deposition and, acting under the instruction of defendant's counsel, he refused to answer all questions as to what occurred thereafter. The only evidence as to what occurred in the elevator after she was on the floor with her foot extending over the edge of the elevator is that of the plaintiff, who testified as above stated, and that, after her leg was broken, the operator continued up to the fourth floor and returned to the basement, went from the basement to the third floor and back and from the basement to the second floor twice, and then finally stopped the elevator while it was between the first and second floors. According to plaintiff's testimony, each time they passed a floor her leg was struck in such fashion that she suffered great agony. This occurred about twenty-three times. During this entire period she was crying in agony and begging and beseeching the operator to stop the elevator.

[1] We have stated the facts somewhat fully because of the constitutional provision which prohibits us from reversing the case unless there has been a miscarriage of justice. In view of the fact that it can be said as a matter of law from these facts that the elevator operator was guilty of negligence, and that the defendant was liable for such negligence, whatever her relation to the defendant may have been, many

questions raised by the defendant and appellant are immaterial.

The appellant claims that the complaint does not state a cause of action because it does not allege the relation of passenger and carrier; that the court erred in denying defendant's motion for a nonsuit; that plaintiff had no right by virtue of her tenancy to go to or from the basement in the elevator; that plaintiff's failure to show she was a "passenger" is fatal to her cause of action; that plaintiff was a trespasser and only entitled not to be wantonly injured; that plaintiff failed to show permission to use the elevator; that the instructions that plaintiff was a "passenger" and entitled to the highest degree of care were erroneous; that the use of the basement by consent or acquiescence made plaintiff a licensee only; that if plaintiff was not a trespasser she was a mere licensee and defendant was required to use only ordinary care toward her; that the defendant owed only ordinary care for the further reason that it was a carrier without reward; that the issue as to plaintiff's right to be in the elevator was withdrawn from the jury by the instructions; that whether plaintiff was a passenger was a question of fact for a jury and was made an issue by the pleadings; that the court erroneously refused to instruct that unless plaintiff's right to be in the basement was shown she could not recover; that the jury were erroneously instructed that plaintiff could recover even if guilty of contributory negligence; that the attempted instructions as to last clear chance failed to embrace all the elements and were erroneous; that the last clear chance rule was not applicable to complaint or evidence; that the instruction as to measure of damages was erroneous; that the court erred in admitting evidence of statements by plaintiff's predecessor and of conversations between plaintiff's predecessor and the janitor of defendant; that the court erred in permitting plaintiff to testify as to the present use of the basement and elevator; that the court erred in permitting a former janitor of defendant to testify concerning the use of the basement; that the court erred in refusing to permit the secretary of defendant to be asked whether plaintiff had any permission to go to the basement to attend to the water supply; that it was error to admit evidence of loss of profits from farming certain lands; that the court erred in stating that it would instruct the jury as

to facts proven; and that it was reversible error to permit plaintiff's counsel to make a second argument to the jury after defendant had waived its argument.

In view of the constitutional rule (art. VI, sec. 4½) that "No judgment shall be set aside, or new trial granted in any case, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a mis-carriage of justice," the case cannot be reversed for these reasons.

All the errors complained of relate to the right of the plaintiff to recover for the injury which she suffered, and, in view of the fact that she was invited to enter the elevator and accepted the invitation to enter therein and was thereafter injured by the negligent management of the elevator by the employee of the defendant, who knew that she was lying helplessly in a position which must necessarily have resulted in her injury if the elevator was moved before she had an opportunity to withdraw her foot from a position of danger, it is unnecessary to consider in detail the points made by the defendant, for it is clear that there has been no miscarriage of justice in holding the defendant liable for plaintiff's injuries.

[2]  The defendant claims that certain instructions given by the court to the jury withdrew the defense of contributory negligence from their consideration. Defendant had pleaded that the plaintiff was guilty of contributory negligence in that she entered the elevator while it was in motion. The only evidence in that regard is the evidence of the elevator-man that he had stopped the elevator a short distance above the floor of the basement, and that just as she was stepping in he lowered the elevator and her foot caught under the floor of the elevator, so that she stumbled into the elevator. Assuming that this evidence is true, neither her entry into the elevator while it was in motion, if it was, nor her fall was the proximate cause of the injury. The injury was caused by plaintiff's leg coming in contact with the floors of the building above the point where she stumbled and resulted not from the descent of the elevator at the

time she stumbled, but the ascending of the elevator after she was lying upon the floor of the elevator. It can be said as a matter of law that the fall of the plaintiff into the elevator was not the proximate cause of the injury. Therefore, even if the instructions complained of had the effect asserted by counsel of withdrawing the issue of contributory negligence from the jury, they were not erroneous.

The other questions raised by the appellant relate to the measure and amount of damages.

[3]   At the time of the trial, more than two years after the time of the accident, the plaintiff was still able to get about only by the use of a wheel-chair. She was unable to bear her weight upon her left leg and suffered some pain when she bore her weight upon her right leg. The physicians who testified in the case agreed that for the time being her injuries were total and were to some extent permanent. The witnesses agreed that, in the absence of an operation to correct the disability, she would not be able to put her left heel to the floor. The physician called by the defendant testified that, while she would suffer some permanent limitation of the functions of the left foot and ankle, such defects could be so far cured by an operation that the total disability of the left leg would be less than ten per cent—that is to say, she would ultimately recover more than ninety per cent of the function of the limb. On the other hand, the plaintiff's physician testified that the limb was permanently injured and it was impossible to tell how long it would be before she would be able to walk upon the limb, but that she might at some time be able to walk with the aid of a cane. The jury were at liberty to accept the testimony most favorable to the plaintiff and evidently did so.

It is claimed that the judgment is excessive. The rule on that subject on appeal is thus stated in *Hale* v. *San Bernardino etc. Co.*, 156 Cal. 713, 715, [106 Pac. 83] : "The amount of damages in such cases is committed first to the sound discretion of the jury, and next to the discretion of the judge of the trial court, who, in ruling upon the motion for a new trial, may consider the evidence anew, determine anew the facts, and set aside the verdict if it is not just. Upon appeal, the decision of the trial court and jury on the subject cannot be set aside unless the verdict is 'so plainly

and outrageously excessive as to suggest, at the first blush, passion or prejudice or corruption on the part of the jury.' " We cannot say that the verdict is excessive as a matter of law.

[4] It had been stipulated that both parties could have an hour in which to present their case to the jury. After plaintiff had closed its opening argument, the defendant waived its argument and the court permitted the plaintiff to further argue to the jury. This is claimed to be error. The plaintiff had evidently planned to have Mr. Meldon open and Mr. Gett close the argument, each to take one-half hour, and was undoubtedly surprised by the defendant waiving argument. The plaintiff thereupon requested that William A. Gett be permitted to address the jury for one-half hour. The court thereupon stated that he would grant the request and offered to allow the defendant to withdraw its waiver of argument and to proceed with its argument for one hour, in accordance with the stipulation, if defendant desired to do so. After consultation, defendant's counsel declined to argue the case, contenting themselves with an objection to the plaintiff's further argument. The court, over defendant's objection, thereupon permitted plaintiff's counsel to argue the case further to the jury. If, after stipulating that each side should have an hour for argument before the jury, the defendant, without previous notice to the plaintiff, waives argument and thus take the plaintiff by surprise, the court, in the exercise of a sound discretion, should allow the plaintiff whatever argument to the jury is necessary in order to overcome the effect of the surprise. And, similarly, should allow the defendant whatever argument was necessary in order to prevent any prejudicial result flowing from the fact that it waived argument before it knew that the court would permit further argument by plaintiff. This was done in this case. The ruling of the court was not erroneous, but proper.

[5] In the appellant's reply brief we are asked to take judicial notice that an elevator is fitted so closely into the shaft as to leave practically no space between the edge of the floor and the wall of the shaft, and that it was a physical impossibility to run the elevator to the top story and back again, as described by plaintiff, because there was barely room enough for clearance of the elevator itself. Appellant

states: ''Plaintiff's recital of the accident was manifestly not only grossly exaggerated but actually untrue, as it is clear that her injury must have occurred through her limb striking the ceiling of the basement. These embellishments were obviously added by her for the purpose of arousing the prejudice and sympathy of the jury.'' As no punitive damages were asked or allowed, the question of how many times the elevator was moved up and down is immaterial except as it indicates the amount of suffering inflicted upon the plaintiff and the degree of negligence of the elevator-man, and the truth or falsity of the plaintiff's testimony was to be determined by the jury. We cannot take judicial notice that it was false.

Judgment affirmed.

Waste, J., Shaw, C. J., Lennon, J., Sloane, J., and Shurtleff, J., concurred.