[Civ. No. 555. Fourth Appellate District.—December 5, 1931.]

A. F. WEBSTER et al., Respondents, v. F. H. HARRIS et al., Appellants.

Harry D. Parker and White McGee, Jr., for Appellants.

Philip T. Lyons and Fred A. Wilson for Respondents.

FREEMAN, J., *pro tem.*—The plaintiffs brought this action alleging that defendant Norma Harris was negligent in driving defendant F. H. Harris' Dodge automobile on Campus Street in Ontario, San Bernardino County, on April 18, 1930, and by reason of such negligence plaintiff Aurilla Webster suffered personal injuries and also special damages. The defendants answered denying negligence, also alleging contributory negligence on the part of plaintiffs. The defendants also filed a cross-complaint against plaintiffs in which they claimed damages by reason of the negligence of plaintiffs which necessitated repairs to defendants' car, loss of the use thereof and caused personal injuries to defendant Norma Harris' body and head, severe contusions and abrasions of the right leg, and numerous other injuries, and prayed judgment against plaintiffs in the sum of $15,000 general and $125 special damages. The case was tried before a jury which rendered a joint verdict for plaintiffs against defendants for $9,000. On October 8, 1930, judgment for $9,000 was entered. Defendants appeal from this judgment.

Appellants contend that the judgment should be reversed on the following grounds: First, excessive damages; second, prejudicial errors of law occurring at the trial; third, no proof of agency between defendants or permission to drive defendants' car; fourth, insufficiency of the evidence.

The first contention is that the judgment awarded to respondents in the sum of $9,000 is excessive. The special damages consisting of expenditures by respondents were $1,026.50. The largest item was $582 for the doctor's ser-

vices. This would leave $7,973.50 as general damages for injuries sustained by respondent. Mrs. Webster at the time of the trial was twenty-eight years of age. Prior to the accident her health was ''pretty good'', ''regular health like anybody else'', ''some days would have a headache''. Nervous system ''was not like it was after the accident''. She was a housewife with three children, the youngest six and the oldest nine years of age. Respondent's left arm and hand were badly injured and mangled and from the wrist upward for about five inches there was a long laceration two inches wide on the left forearm which left the tendons of the fingers and hand all exposed. There was a comminuted compound fracture of the bone of the ring finger and the tendon to that finger was severed. The treatment required an anaesthetic and a second breaking of the callous in order to extend the finger. Respondent was in the hospital four weeks. On returning home she was confined to her bed constantly for one month longer. For three months following her return home, respondent was in bed the biggest part of the time. The injuries were received April 18, 1930, and the trial began October 2, 1930, at which time, being approximately five and one-half months after the injuries were received, the respondent was still in bed ''quite a lot of the time''. The doctor described the course of treatment as a ''long siege'', and at the time of the trial plaintiff was still under the care of her physician. Respondent suffered pain in the chest of which she complained a great deal. She was bruised all over, including a severe bruise on one hip, and pain in the chest of which she complained for nearly a month. The doctor described the injuries as painful as that of a burn, and particularly were the injuries to the hand and forearm very painful. At the time of the trial it was the opinion of the doctor that it would take six weeks or two months longer before the plaintiff would be entirely free from pain, after which there would only be pain in endeavoring to manipulate the fingers to restore the normal function. Any attempt to grip the hand, as well as massaging it, at the time of the trial occasioned considerable pain. The shock of the accident has subjected respondent to fainting spells, the last of which occurred a few days before the trial. When respondent was brought to the hospital she was suffering a great deal from the shock

of the injury, and was in a very nervous state and hysterical. At the time of the trial she was improved somewhat, but still suffered from the nervous condition, and was still taking a nerve sedative medicine. It was the opinion of the doctor that it would take four to six months after the trial before the respondent would completely recover from the nervous condition. Respondent's husband emphasized the nervousness and irritability of the respondent. Respondent up to the time of trial had been unable to do any of her normal housework with the result that assistance was employed. At the time of trial her work was confined to what could be done with one hand. Respondent is unable to use three of the fingers of the left hand and can only pick up things with the thumb and first finger. It is the doctor's opinion that there would be permanent injury in the ring finger with some improvement in the little finger, but there would always be a permanent impairment of the function of the whole hand, leaving her with a grip "very weak". Respondent disclosed the injured hand and arm to the jury, showing scars on the back of the hand and on the forearm. The scars extended "up to the elbow". The scar on the back part of the hand will be permanent. This scar was "red and angry looking" at the time of trial, and although the redness would fade out in the course of a few months and the raised portion would level down somewhat, there will always be some irregularity of the surface.

Where the question of excessive damage is involved there are certain rules to follow. First, the trial court has power to control or limit verdicts which are in its judgment deemed excessive. "The question of excessive damages is one that is first addressed to the trial court. Practically, the trial court must bear the whole responsibility in every case. The power of the appellate courts over excessive damages exists only when the facts are such as to suggest, at first blush, prejudice or corruption on the part of the jury." (*Morris* v. *Standard Oil Co.*, 188 Cal. 468, at 473 [205 Pac. 1073, 1075]. See, also, *Bisinger* v. *Sacramento Lodge No. 6*, 187 Cal. 578, at 585 [203 Pac. 768] ; *Hale* v. *San Bernardino Valley Traction Co.*, 156 Cal. 713, at 715 [106 Pac. 83, 84].)

In the case of *Hale* v. *San Bernardino Valley Traction Co.*, *supra*, at page 715, the court said: "The amount of damages

in such cases is committed first to the sound discretion of the jury and next to the discretion of the judge of the trial court, who in ruling on motion for new trial may consider the evidence anew, determine anew the facts, and set aside the verdict, if it is not just. Upon appeal, the decision of the trial court and jury on the subject cannot be set aside, unless the verdict is 'so plainly and outrageously excessive as to suggest, at the first blush, passion or prejudice or corruption on the part of the jury'.''

In the case at bar there was no motion for a new trial. Therefore the lower court had no opportunity to pass on this except on his own motion. ''The only method of determining whether a verdict is excessive is by comparing the amount of damages awarded thereby with the evidence.'' (*Horn* v. *Yellow Cab Co.*, 88 Cal. App. 678, at 681 [263 Pac. 1025, 1026].) Where the verdict is so grossly disproportionate to any reasonable limit of compensation warranted by the facts as to shock the sense of justice and raise at once a strong presumption that it is based on prejudice or passion rather than sober judgment, the judge is at liberty to interpose a judgment as against that of the jury. (*Harrison* v. *Sutter St. Ry. Co.*, 116 Cal. 156 [47 Pac. 1019].)

''In considering an attack upon a verdict as excessive, the appellate court must treat every conflict in the evidence as resolved in favor of respondent and must give him the benefit of every inference that can be drawn in support of his claim.'' (*Wallace* v. *Pacific Elec. Ry.*, 105 Cal. App. 664 at 672 [288 Pac. 834, 838].)

This court after considering the evidence cannot say that the judgment of $9,000 was excessive under the foregoing rules. But we are called upon to pass upon the amount of liability of appellant F. H. Harris, as a matter of law, under section 1714¼ of the Civil Code. This section in substance is that every owner of a motor vehicle shall be liable for injury or death to persons, resulting from negligence in the operation thereof, ''in the business of such owner or otherwise, by any person using or operating the same with permission, express or implied, of such owner, provided that the liability of an owner for imputed negligence imposed by this section and not arising through the

relationship of principal and agent or master and servant shall be limited to the amount of five thousand dollars'', etc.

■ At the trial it was stipulated by the parties ''that F. H. Harris was the owner of the automobile that was being driven by Mrs. Norma Harris in the occurrence of the accident here in question and the automobile was being driven by Mrs. Harris with his express permission'', also ''consent''. There was no evidence of principal and agent existing between the defendants. F. H. Harris was the father-in-law of Norma Harris. There would be no implied agency, nor could there be negligence imputed to him other than that she drove his automobile with his permission and consent. Therefore his liability falls within the provisions of section 1714¼ of the Civil Code. Neither of the parties herein proposed instructions calling this section 1714¼ to the attention of the jury. The court did not instruct them in relation thereto nor did appellants object to the form of the verdict. It necessarily follows, therefore, that the judgment herein should be modified by reducing the judgment as to F. H. Harris to $5,000, as a matter of law.

■ The appellant contends that the following instruction given to the jury was error: ''The fact that the driver of an automobile did not know that anyone was on the highway would be no excuse for conduct which would have amounted to recklessness if he had known that another vehicle or person was on the highway.''

This instruction correctly states the rule, and has been repeatedly upheld. (*Meyers* v. *Bradford,* 54 Cal. App. 157 [201 Pac. 471]; *Hatzakorzian* v. *Rucker-Fuller Desk Co.,* 197 Cal. 82, 99 [41 A. L. R. 1027, 239 Pac. 709]; *Rush* v. *Lagomarsino,* 196 Cal. 308, 317 [237 Pac. 1066].)

■ Appellant also contends that the court erred in giving the following instruction, to wit:

''Every person has a right to assume that every other person will obey the law and in the absence of reasonable grounds to think otherwise, it is not negligence to assume that he is not exposed to danger which could be occasioned only through the violation of law or duty by another. However, such person must himself exercise due care on his part.

''Plaintiff Aurilla Webster, had a right to assume that defendant Norma Harris would drive her automobile in a careful, prudent and lawful manner and that if she intended

to make a left turn upon the highway, that before turning, she would see that the turn could be made in safety and would give a signal plainly visible of her intention to make such turn."

It is contended by appellant that this instruction "fails to embody the rule that there must be no circumstances to warn the party to the contrary". The first part of this instruction states "that one has the right to assume that others will obey the law", and "if there is no reasonable grounds to think otherwise it is not negligence to assume that he is not exposed to danger". The jury were told in effect that "plaintiff Aurilla Webster had a right to assume that defendant Norma Harris would drive her automobile in a careful, prudent and lawful manner . . . in the absence of reasonable grounds to think otherwise". In other words before Mrs. Webster could assume that Mrs. Harris would drive her automobile in a careful, prudent and lawful manner, the jury were told that they must find there was an absence of reasonable grounds for her to think otherwise. Although this whole instruction could have been more carefully drawn, the jury undoubtedly considered this one instruction as a whole, and were not misled as to the law applicable to the evidence given in the case. It was as much the duty of the jury to consider the first part of the instruction as the latter. We find no error in the giving of this instruction.

■ Appellant next contends that there was an insufficiency of the evidence to support the judgment. The evidence was that the accident occurred on Campus Street, which runs north and south in the city of Ontario, San Bernardino County, between the intersecting streets running east and west, namely, G and H Streets, H Street being north of G. I Street is the next street north of H. The evidence was that defendant Norma Harris, on the eighteenth day of April, 1930, between 9:30 and 10 o'clock in the morning, started for the grocery-store from her home in a Dodge automobile belonging to defendant F. H. Harris, the father-in-law of defendant Norma Harris. Her home was on the west side of Campus Street, north of I Street. The accident occurred south of H Street, a little south of the grocery-store which was located on the east side of Campus, and between G and H Streets.

After leaving her home she drove at the rate of about 25 miles per hour and slowed down to 15 and 20 miles per hour at H Street, and from H. Street she continued at about the same speed. As she approached a point about opposite a driveway near the grocery-store, located on the east side of the street, she made a left-hand turn across Campus Street. The respondent Aurilla Webster was following the Dodge car south at about the same speed defendant was traveling. From a point 25 feet south of H Street the witness Aloha Mabie, who was riding with Mrs. Webster, testified that "Mrs. Harris' car had turned, as I say, west so that the right wheels of her car were about in the center of the five-foot drain or culvert and she proceeded in that position I should say, oh, about 25 or 30 feet further south in that position, and then without any signal or warning of any kind, made a sharp left or east turn upon the pavement on the street and closed off our way of going south on Campus". Respondent Aurilla Webster testified "She (Mrs. Harris) turned out and drove down in the drain about 10 feet, I judge, and I honked my horn just about a little below the intersection and started to go around her, but I didn't increase my speed any, and she stepped on the accelerator, I guess, and she just shot right out in front of me and didn't give any signal whatsoever." Witness Aloha Mabie further testified "Mrs. Webster sounded her horn when Mrs. Harris turned a bit to the right and that slackened her speed to about 15 miles an hour and proceeded a little bit to the east of the street. We were still a foot on the west side of the center line, and when the impact occurred I judge the car in which I was riding, the front wheels were approximately two feet east of the center line and our rear wheels were still to the west of the center line."

The impact took place just about the center of the street. The Harris car was at a slant, but was across the road east and west. The front was east or left of the center line and the rear was on the other side of this line. Respondents' car turned over on the street and injuries resulted. In other words, respondent Aurilla Webster and Aloha Mabie were in respondents' automobile and appellant Mrs. Harris, was in her father-in-law's automobile. Both cars were traveling south on Campus Street on their right-hand side of the

street. Mrs. Webster was following appellant's car from I Street. When they came to or near the grocery-store Mrs. Harris turned a little to the right and then to the left to cross the street and respondent had turned to her left to pass, and when the Harris automobile was nearly across the center line the automobiles came together and injuries resulted therefrom. Speaking of appellant's car respondent stated: "It started to slow down just below the intersection as it turned out into the drain. It was very slow; I imagine about five miles an hour but I don't know—very slow." At the time Mrs. Harris pulled out toward the drain respondent testified she was traveling approximately "15 and 20". When she first saw the car start to turn to the left her car was between 10 and 15 feet from appellant's car. Respondent was asked the question "And up to that time had you looked to see whether or not the driver of the other car gave any signal?" To which she answered "I watched her all the way down. She gave no signal." The witness Aloha Mabie, who was riding in Mrs. Webster's car testified practically the same as Mrs. Webster and especially that plaintiff honked her horn and that defendant Norma Harris gave no signal to indicate her intention to turn to the left. Mrs. Harris and one other witness testified that such signal was given by her by extending her left hand out on her left. There being a conflict as to this, the jury evidently took the testimony on behalf of respondents to be correct. The evidence above related was sufficient to support and justify the verdict and judgment.

The judgment is affirmed except that it is modified by reducing the judgment as to F. H. Harris, to $5,000. It is further ordered that each party hereto shall bear his own costs on appeal.

Barnard, P. J., and Marks, J., concurred.