[Civ. No. 2252. Fourth Appellate District.—April 27, 1939.]

DAISY A. DUCLOS et al., Respondents, v. S. TASHJIAN et al., Appellants.

Chester O. Hansen, W. H. Stammer and Galen McKnight for Appellants.

Irvine P. Aten, Richard V. Aten, Frank Curran and Douglas A. May for Respondents.

MARKS, J.—A judgment was rendered against defendants in the sum of $15,330.69 as damages for the death of Cuprien Duclos in a collision between two automobiles being driven by defendants. Duclos was the husband of Daisy A. Duclos and the father of Rose A. Brim and Edith J. Hurlbert. The defendants took separate appeals.

Defendant S. Tashjian presents the following grounds for reversal of the judgment against him: That Duclos was a guest and not a passenger in Tashjian's automobile at the time of the fatal accident; prejudicial error in instructions given the jury; prejudicial error in refusing an instruction which he requested. Both defendants urge that the verdict and judgment for $15,330.69 is excessive.

The record contains ample evidence of concurrent negligence of both defendants. The implied findings of the jury that Duclos was not guilty of contributory negligence finds sufficient evidentiary support. There is no evidence showing wilful misconduct or intoxication on the part of Tashjian. The case is factually similar to *Meek* v. *Fowler*, 3 Cal. (2d) 420 [45 Pac. (2d) 194]. Therefore it will only be necessary for us to concern ourselves with the factual situation showing whether Duclos was a passenger or a guest while riding with Tashjian.

Duclos was an expert machinist and had his place of business adjoining his residence in the city of Fresno. Tashjian owned a farm a short distance from that city.

On September 18, 1937, Duclos was riding in Tashjian's car when it came into collision with a car being driven by Myrtie Jaquish in the intersection of Willow and Jensen Avenues near Fresno.

As to the object of this ride with Tashjian, Mrs. Duclos testified as follows:

"Q. Now, Mrs. Duclos, you have seen this man testify who is one of the defendants in this case, S. Tashjian, have you not? A. Yes, sir. Q. I will ask you if he came to your home on Church Avenue September 18? A. He did. Q. Did you see him? A. I did. Q. Did you have a conversation with him? A. I did. Q. Did he say anything to you then about hiring Mr. Duclos? A. Yes. He said, 'Where is the boss?' I says, 'He is out here in the shop.' And I says—he says, 'Well, I want to hire him to fix my engine, my pump.' I says, 'Well, he is in the shop there'. He got out and went in the shop. Q. He went in the shop? A. Yes. Q. Did you see your husband afterwards? A. Not until I saw him in the hospital. Q. I mean, did you see your husband leave? A. Oh, yes, he came out of the shop. Q. Did he have his tools with him? A. Yes, he had them on his shoulder. . . . A. Well, he drove in and stopped between the house and the shop, right at the entrance of the drive, and he was headed, and he says, 'Is the boss in?' I says, 'Yes, what do you want?' 'Well,' he says, 'I want him to go out and fix my pump, hire him to fix my pump.' 'Well', I says, 'he is in the shop.' That is what I says, 'He is in the shop'."

On the same subject Tashjian testified as follows: "Q. You have a ranch on Minnewawa Avenue, have you not? A. Yes, sir. Q. On the 18th day of September of last year you went to the home of Mr. C. Duclos to employ him to go to the Minnewawa ranch—the Minnewawa Avenue ranch of yours to fix or repair a pump of yours that had gotten out of order, did you not? A. I did not. Q. What is that? A. I did not employ him. Q. You did not? Well what did you go there for? A. I went to ask him if he could come and look at a pump, if he can take the job and fix it or not. Q. Oh, so you got him to see if he could repair the pump? A. Or not. Q. Yes. A. Take the job. Q. What is that? A. Take the job. Q. If he could do the job, is that the idea? A. Take the job or not."

The most frequently cited case on the question of what compensation must be given by the rider for the ride, to constitute him a passenger and not a guest, is *Crawford* v. *Foster*, 110 Cal. App. 81 [293 Pac. 841]. In that case the defendant, an automobile dealer, was demonstrating an automobile to the plaintiff, a prospective buyer, at the time of the accident

and injury of the plaintiff. In holding that Mrs. Crawford gave compensation for her ride and was therefore a passenger and not a guest, this court said:

"Automobile dealers and salesmen are not only willing but anxious to exchange their time and the use of a car for the time and attention of a person who is in the market for such a car. There can be no question that in actual business, the one is regarded as an equivalent or recompense for the other. It will be noted that the definition in the statute does not say 'without paying therefor', but rather says 'without giving compensation therefor'. This indicates an intention not to limit the same to a person definitely and specifically paying for his transportation in cash or its equivalent, but to include in its scope a person who gives such a recompense for the ride as may be regarded as a compensation therefor, that is, a return which may make it worth the other's while to furnish the ride. . . . In *Searcy* v. *Grow*, 15 Cal. 117, 118, the word 'compensation' is defined as 'that return which is given for something else; in other words, a consideration'. A consideration may be any benefit conferred or any prejudice suffered. (Civ. Code, sec. 1605.) The taking of a demonstration of an automobile, with its accompanying possibilities of profit, would not only seem to be a benefit to the dealer, but a return fully proportionate to any benefit conferred on the prospect. . . . It is significant that in such cases heretofore, the prospective purchaser, when referred to, has usually, if not always, been designated as a passenger, or a buyer, rather than as a guest. We feel that this designation has not been accidental. The words 'passenger' or 'buyer' as used in such cases, better convey the meaning intended than would the word 'guest', because such a demonstration partakes more of the nature of a contractual relationship than of the entertainment of an invited guest, or the conferring of a favor by a host, with no hope of return and no profit in view. It is not undertaken by the dealer as an act of hospitality, or a favor, but as a real and vital part of his business, with an eye to his own profit. It is participated in by the customer, not as a means of obtaining free transportation, but as an integral part of a business transaction. It may be considered as a distinct benefit to the dealer."

We think, that under the foregoing rule, Duclos was a passenger and not a guest of Tashjian on the fatal ride.

Tashjian had a defective pump on his ranch. Duclos was an expert mechanic. Tashjian wanted his pump fixed. He was transporting Duclos, with his tools, to his ranch to look at the pump. It is significant that Duclos' tools were taken on the trip. This would indicate an intention to fix the pump immediately if it could be done. To paraphrase a portion of a quoted paragraph of the opinion in *Crawford* v. *Foster, supra*: The journey was not undertaken by Tashjian as an act of hospitality nor as a favor, but as a real and vital part of his own business with an eye to his own benefit. It was participated in by Duclos, not as a means of obtaining free transportation, but as an integral part of a business transaction. It may be considered as a distinct benefit to Tashjian as a step towards getting his pump repaired and put in operation.

The object of the journey was inspection of the defective pump, with the purpose of its repair, a distinct benefit to Tashjian. This clearly constituted Duclos a passenger within the rules announced in *McCann* v. *Hoffman*, 9 Cal. (2d) 279 [70 Pac. (2d) 909], as follows:

"Compensation has been deemed made: . . . when the plaintiff accepted the ride at the behest of the driver to assist the latter in arriving at his destination or fulfilling the object of the journey. (*Haney* v. *Takakura*, 2 Cal. App. (2d) 1 [37 Pac. (2d) 170]; *Lerma* v. *Flores*, 16 Cal. App. (2d) 128 [60 Pac. (2d) 546]; *Lyttle* v. *Monto*, 248 Mass. 340 [142 N. E. 795]) when . . . a benefit of a tangible nature was conferred upon the driver or his principal by reason of the transportation. (*Lindemann* v. *San Joaquin Cotton Oil Co.*, 5 Cal. (2d) 480 [55 Pac. (2d) 870]; *Peccolo* v. *City of Los Angeles*, 8 Cal. (2d) 532 [66 Pac. (2d) 651]; *Sumner* v. *Edmunds*, 130 Cal. App. 770 [21 Pac. (2d) 159]; *Woodman* v. *Hemet Union High School Dist.*, 136 Cal. App. 544 [29 Pac. (2d) 257]; . . .)"

Tashjian urges that as he had not employed Duclos, the benefits of the ride all flowed to Duclos because it gave him the opportunity to secure employment for which he would receive compensation. An actual contract of employment of Duclos by Tashjian was no more necessary to constitute compensation for the ride in this case than was an actual sale of an automobile necessary in the Crawford case.

Because some benefit from the trip may accrue to the rider is not controlling. The statute does not so provide.

A prospective benefit to the rider does not compensate and destroy by balancing an independent and separate compensation for the ride given by the rider to the driver. It is sufficient if, as here, the person who accepts the ride gives compensation to the driver for it. (Sec. 403, Vehicle Code; *Smith* v. *Joint Union High School Dist.,* 118 Cal. App. 673 [5 Pac. (2d) 930]; *Jensen* v. *Hansen,* 12 Cal. App. (2d) 678 [55 Pac. (2d) 1201]; *Parrett* v. *Carothers,* 11 Cal. App. (2d) 222 [53 Pac. (2d) 1023]; *Rogers* v. *Vreeland,* 16 Cal. App. (2d) 364 [60 Pac. (2d) 585].)

Tashjian complains of the following instruction given the jury at the request of plaintiffs:

"You are instructed that the term 'guest' used in the Motor Vehicle Act of this State, means a person who accepts a ride in any vehicle without giving compensation therefor. You are instructed that the term 'compensation' does not necessarily mean the payment of money or the transfer of property of any description from one person to another. A person who confers any benefit upon another in whose vehicle he accepts a ride may thereby pay a compensation for such ride."

He urges that the instruction fails to incorporate the important element that the compensation given by the passenger to the driver must be *for the ride.* We cannot agree with this argument. The fact that the compensation must be given *for the ride* sufficiently appears from the concluding words of the first sentence of the instruction.

Tashjian also criticizes the instruction because in the last sentence it is stated that *any benefit* conferred by the passenger on the driver is *compensation.* It is now established that the benefit conferred must be not only for the ride but also must be a "tangible" or "material" benefit and cannot be an "incidental" benefit. (*Rogers* v. *Vreeland, supra; Yates* v. *J. H. Krumlinde & Co.,* 22 Cal. App. (2d) 387 [71 Pac. (2d) 298].)

In *Haney* v. *Takakura,* 2 Cal. App. (2d) 1 [37 Pac. (2d) 170], the court held an instruction, couched in language almost identical to the one we are considering, an incorrect statement of the law.

We have quoted practically all of the material evidence in the record concerning the purposes of the fatal trip. From that evidence but one reasonable inference can be drawn, namely, that a tangible and material consideration flowed

from Duclos to Tashjian for the ride. That consideration was the service to be rendered and time given by Duclos, the expert mechanic, in inspecting the defective pump of Tashjian to determine if he could repair it. As there is no conflict in the evidence on this question, and as no reasonable conflicting inference could have been drawn from that evidence, the fact that the instruction did not correctly define "compensation" cannot be held to have been prejudicial. Had the instruction been technically correct no other conclusion could have been reached by the jury from the evidence than the one it did reach, namely, that Duclos was the passenger and not the guest of Tashjian.

Tashjian complains of the refusal of the trial judge to give an instruction requested by him to the effect that plaintiffs must prove by a preponderance of the evidence that during the ride Duclos was a passenger and not a guest of Tashjian.

The trial court instructed the jury that "it is the plaintiffs' contention that Mr. Duclos was so riding in said automobile as a passenger for compensation". The jury was also instructed that "upon the plaintiffs rests the burden of proving their case by a preponderance of the evidence". Other proper instructions were given on preponderance of the evidence. Thus the jury was sufficiently informed that plaintiffs must prove by a preponderance of the evidence that Duclos was a passenger in the Tashjian car before they could recover against him. Further, if we should hold this instruction on the burden of proof and preponderance of the evidence defective we must regard any such error as relatively unimportant from the point of view of being prejudicial, as all the evidence, not a mere preponderance, was to the effect that Duclos was Tashjian's passenger and not his guest.

Both defendants stoutly maintain that the judgment for $15,000, general damages, is excessive. They do not question the $330.69 special damages.

The question of the duty of an appellate court in considering the amount of damages awarded in a death case is always a difficult one, where, as here, the verdict is clearly large under the evidence produced. While there are well settled rules of law announcing the principles upon which such awards must be based, there is and can be no fixed sum above which the amount of the verdict cannot go. In

all these actions the recovery is limited to the pecuniary loss and ''such damages may be given as under all the circumstances of the case, may be just''. (Sec. 377, Code Civ. Proc.) While damages are recoverable only for the pecuniary loss suffered, that loss includes the loss of the comfort, protection and society of the deceased. (*Clark* v. *Tulare Lake Dredging Co.*, 14 Cal. App. 414 [112 Pac. 564].) ''Loss of comfort, protection and society is a proper element of injury and is by no means to be classed as compensable by merely nominal damages.'' (*Gilmore* v. *Los Angeles Ry. Corp.*, 211 Cal. 192, at p. 200 [295 Pac. 41].) The pecuniary loss suffered from this cause ''is difficult to measure in mere dollars and cents, and manifestly must, with the whole question of damages, be left to the good sense and sound discretion of the jury to be exercised in the light of all the circumstances of the case''. (*Clark* v. *Tulare Lake Dredging Co.*, *supra*.) ''The power of appellate courts to control the amount of damages awarded comes into play only when the facts before it are such as to suggest passion, prejudice or corruption on the part of the jury. (*Morris* v. *Standard Oil Co.*, 188 Cal. 468 [205 Pac. 1073]; *Bisinger* v. *Sacramento Lodge No. 6*, 187 Cal. 578 [203 Pac. 768]; *Hale* v. *San Bernardino etc. Co.*, 156 Cal. 713 [106 Pac. 83]; *Webster* v. *Harris*, 119 Cal. App. 46 [6 Pac. (2d) 88].)'' (*Sassano* v. *Roullard*, 27 Cal. App. (2d) 372 [81 Pac. (2d) 213].)

To measure the amount of damages awarded by these rules of law requires a summary of the evidence on that question.

Rose A. Brim and Edith J. Hurlbert are the daughters of Daisy A. Duclos and deceased. Each is married and is living with and is supported by her husband. There is nothing in the record indicating that either of them since marriage had received or had any reasonable expectation of receiving any monetary assistance from deceased. Therefore, as to them, any value of support by deceased is eliminated from the case. However, those facts do not deprive them of their right to recover the actual value of their loss of the comfort, protection and society of their father. As we have seen, this loss has an actual value and cannot be compensated by nominal damages.

The question of translating the amount of such a loss into money is always troublesome. Certainly if we should assume that the jury placed a value on this loss to each daughter at one hundred fifty dollars a year, we could

not conclude that such an award suggests passion, prejudice or corruption on the part of that body. In the exercise of their discretion we believe the jurors might have concluded that each daughter suffered a pecuniary loss from the death of her father in the total sum of $1665, plus the small interest that sum will earn at the prevailing modest rates, during the eleven and one-tenth years of the life expectancy of deceased.

Daisy A. Duclos was happily married to deceased. He was industrious and hard working. At the time of his death he was making about $1800 a year. He was in excellent health. Although sixty-five years of age, his picture, taken shortly before his death, gives the appearance of a much younger man. Mrs. Duclos was entitled to be compensated for the pecuniary value of the loss of her husband's comfort, protection and society. If we assume that the jury placed a monetary value of $300 a year on this loss to her, or a total value of $3,330, certainly we could not conclude that there had been any abuse of that discretion which the law vests in the jury to fix such damages.

The question yet remains: Is the award to Mrs. Duclos of the $8,340 remaining, or $781.35 a year, plus interest, as the pecuniary value of her loss of support by her husband, so large as to suggest at first blush, passion, prejudice or corruption on the part of the jury? We think not.

Therefore, we cannot conclude that the amount of damages awarded plaintiffs is excessive as that term is used in the law in California.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 26, 1939.