[Civ. No. 12237. Second Appellate District, Division One.—August 6, 1940.]

GRACE FINLEY et al., Respondents, v. FRANK G. STEINER et al., Appellants.

Chase, Barnes & Chase, Laurence A. Peters and Thomas R. Suttner for Appellants.

Howard B. Henshey and Charles E. R. Fulcher for Respondents.

WHITE, J.—In this action plaintiffs Grace Finley and Velda Baird recovered a judgment against Frank G. Steiner, the driver of an automobile, and Dan Wray, his employer, for damages as the result of the death of Robert W. Finley, husband of Grace Finley and father of Velda Baird, he having died from injuries received while riding as a guest in the automobile of his father, Alexander K. Finley, when it collided with the automobile driven by the aforesaid Frank G. Steiner. The court found that the death of the decedent was occasioned by and through the concurrent negligence of the drivers of both automobiles and absolved the deceased of any contributory negligence. Judgment was accordingly rendered against defendants in favor of Grace Finley, the widow, for $12,500 general damages; $754 special damages, and in favor of the daughter, Velda Baird, in the sum of $1,000.

As to the other named plaintiffs, they are the surviving heirs of Isabel Finley, who was the wife of Alexander K. Finley. Mrs. Finley also was fatally injured in the same collision. As to her heirs, however, judgment went for the defendants on the ground that the contributory negligence of her husband, Alexander K. Finley, driver of one of the involved automobiles, was imputed to her. From the last-named judgment no appeal was taken, and we are therefore concerned only with the appeal from the judgment rendered in favor of the wife and daughter of Robert W. Finley.

The accident occurred at 1:30 on the afternoon of December 13, 1937, at the intersection of Nordhoff Street and Van

Nuys Boulevard in the San Fernando Valley section of the city of Los Angeles. The day was clear and the pavement dry. Both streets were paved and each was approximately 40 feet wide. Boulevard stop signs, requiring traffic on Nordhoff Street to stop before crossing Van Nuys Boulevard, had been authoritatively erected at the intersection pursuant to resolution of the city council, thereby establishing Van Nuys Boulevard as a "through highway". (Vehicle Code, secs. 82.5 and 471.) The vehicle operated by defendant Steiner was moving north on Van Nuys Boulevard when it struck the right side of the eastbound car driven by Alexander Finley as the latter crossed the intersection on Nordhoff Street. The court found that the Finley car did not stop before entering the intersection.

Frank G. Steiner, driver of defendant Wray's car, called by plaintiffs under section 2055 of the Code of Civil Procedure, testified that as he approached the intersection he was driving 25 to 30 miles per hour; that after coming almost to a stop at a railroad crossing six-tenths of a mile south of the intersection he accelerated to 25 or 30 miles per hour, and did not exceed that speed at any time; that he first saw the Finley car when he was about 35 feet from the south line of Nordhoff Street, at which time the Finley car was approximately 20 or 25 feet from the west line of Van Nuys Boulevard on the south or right side of Nordhoff and traveling 20 to 25 miles per hour; that thereupon Finley accelerated his car and Steiner applied his brakes and skidded—moving straight ahead—until the impact, which occurred in the intersection 2 or 3 feet north of the south line of Nordhoff. According to the witness, his car stopped almost instantly after the impact and the front end slid to the right so that it came to rest pointing northeast, while the Finley car went on past the Steiner car, turned to the left into some shrubbery, then turned sharply to the right and overturned on its left side at the northeast corner of the intersection. Steiner suffered only a slight abrasion on his forehead.

Frank Jones testified that he was driving with Mrs. Jones north on Van Nuys Boulevard immediately before the accident happened; that as he crossed the railroad track six-tenths of a mile south of the intersection, a car passed him going north; that no other car passed him up to the time he reached the intersection. He further testified that after

slowing down for the crossing he accelerated to about 45 miles per hour; that he first observed there had been a collision when he had traveled two-thirds of the distance from the railroad crossing to the intersection. The witness' wife estimated the speed of the car that passed them as between 55 and 70 miles per hour as it moved ahead.

Alexander K. Finley testified that he brought the Finley car to a stop about 3 feet west of the west line of Van Nuys Boulevard, from which point he could see about 276 feet south on Van Nuys; that he did not see the other car until he had started up and had reached the middle of the street, when, he supposed, the other car was 33 feet away; he did not remember whether he looked down Van Nuys Boulevard again after starting up; that his estimate of defendants' speed as 80 miles per hour was based on "what they told me of the accident . . . "; and admitted that at the taking of his deposition he testified, "I hadn't time to form any" (estimate of speed) "because it was done all at once." It also appeared that his testimony as to where he stopped before crossing Van Nuys Boulevard was founded on measurements taken by him after the accident based on his recollection of the distance he could see down Van Nuys Boulevard when he allegedly stopped.

A police officer testified that he and his partner were driving behind the Finley car and were about 150 feet away when the collision took place; that the Finley car did not stop but was going about 15 miles per hour as it reached the intersection and then increased speed slightly; that he formed no estimate of the speed of the other car; that before the cars were moved he and his fellow officer measured the skid marks of the defendants' car and found them to be 35 feet long and "practically straight" except the last two feet at the north end, where they curved to the east. The other officer testified that they saw the accident from about 75 yards from the intersection and that they measured the marks after the cars had been moved away. The defendant Steiner testified that he was going about 10 miles per hour at the moment of impact, and that the skid marks were measured from the front of his car and that they were between 24 and 25 feet. Walter Finley, a brother of decedent, testified that he "stepped off" the skid marks the day after the accident; that they were "approximately between" 60 and 75 feet long. A garageman called on behalf of plaintiffs testified that he

examined the Finley car after the accident and found that the right side of the frame was "bent in approximately five inches"; that the cross-members of the frame also "were bent to a certain extent".

Appellants' chief contention is that the findings are not supported by the evidence; that "the undisputed evidence shows that the defendants were not guilty of any negligence whatsoever"; that the findings that defendant Steiner was negligent and that his negligence was a proximate cause of the accident "are not supported by the evidence or any inference that may properly be drawn from the evidence"; and further, that "the sole proximate cause of the accident was the negligence of Alexander K. Finley. Any negligence on the part of the defendant Steiner, even if shown, was not a proximate or legal cause of the collision, and the court erred in so finding."

It is true, as contended by appellants, that the burden rested upon the plaintiffs at the trial to prove the facts constituting negligence on the part of defendants. (*Diamond* v. *Weyerhauser,* 178 Cal. 540 [174 Pac. 38]; *Tower* v. *Humboldt Transit Co.,* 176 Cal. 602 [169 Pac. 227]; *Wood* v. *Los Angeles Ry. Corp.,* 172 Cal. 15 [155 Pac. 68].) Under the law, therefore, it devolves upon us to ascertain whether the findings as to negligence are substantially supported by the evidence, and if such evidentiary support is lacking we must reverse the judgment. (*Houghton* v. *Loma Prieta Lbr. Co.,* 152 Cal. 574 [93 Pac. 377, 14 Ann. Cas. 1159, 14 L. R. A. (N. S.) 913]; *Wynne* v. *Wynne,* 20 Cal. App. (2d) 131 [66 Pac. (2d) 467].)

Defendant Steiner testified that as he crossed a railroad track six-tenths of a mile removed from the scene of the accident he came "almost to a stop"; that he then "went back to a speed of about 25 or 30 miles per hour up until directly before the accident". He further testified that he first observed the Finley vehicle when about 35 feet from the point of impact, and that the latter was then traveling about 20 to 25 miles per hour, but its speed was accelerated, whereupon, according to Mr. Steiner, he applied his brakes. In contradiction of defendant Steiner's testimony that he practically stopped at the railroad crossing six-tenths of a mile from the accident, we find the testimony of the witness Frank Jones, who with his wife was in an automobile traveling in the same direction as defendant Steiner. This witness

testified that before he reached the railroad crossing his automobile was going about 45 miles per hour; that he slowed down for the crossing and then increased his speed again to about 45 miles per hour. Mr. Jones further testified that at the time defendant Steiner's automobile passed him at the crossing it was traveling at a rate one-third faster than the Jones car. Mrs. Jones, who was riding with her husband, estimated the speed of the Steiner automobile as it passed them at the railroad crossing as between 55 and 70 miles per hour. Although there was a conflict in the evidence as to the length of the skid marks made by the defendant Steiner's automobile, there is in the record evidence that these skid marks were in a straight line and were from 60 to 75 feet in length. The record also reflects evidence that the defendant Steiner's automobile struck the Finley vehicle on the right side with such force that the right side of the frame was bent in five inches; the right rear door, composed of steel, was bent in six inches, while the edge of the steel floor on the right side was pushed up approximately six inches. ■ The trial judge was not compelled to accept defendant Steiner's estimate of his speed, but was entitled to infer from the length of the skid marks and the force of the impact, as well as the testimony of Mr. and Mrs. Jones, that his actual speed was greatly in excess of that to which he testified. In determining the credibility of the witness Steiner, the trial court was authorized to consider all of the facts and circumstances of the transaction and to believe the testimony of Mr. and Mrs. Jones in contradiction of that given by Steiner as to his speed when he was crossing and after he had crossed the railroad tracks a short distance from the scene of the accident. The court was authorized to disbelieve the testimony of defendant Steiner as to his speed at the time he crossed the intersection if the court believed his testimony was false as to the speed at which he claimed he was traveling when he passed the automobile of Mr. Jones at the railroad crossing.

Under all of the foregoing facts, we cannot say that the trial court erred in holding that defendant Steiner was unmindful of his duty to anticipate that he might meet vehicles at any point on the highway and particularly at intersections thereof, and that he failed to keep his machine under such control as would enable him to avoid a collision under the conditions here present. In other words, it was a question

for consideration by the trial court as a matter of fact to determine whether, under all the circumstances here present, including the physical facts, defendant Steiner was driving his automobile in conformity with the requirements of section 510 of the Vehicle Code. The testimony herein narrated presents substantial evidence to warrant the trial court in concluding as it did that defendant Steiner was not driving his car at a careful and prudent speed, not greater than was reasonable and proper, and at such speed as not to endanger the life, limb or property of any person. Therefore we cannot disturb the finding that such negligence on the part of defendant Steiner, concurring with the negligence of Alexander K. Finley, driver of the automobile in which decedent was riding, was the proximate cause of the collision. To do so would mean a substitution of the opinion of this court on the facts of the case for the opinion of the trial court with reference thereto, which, as we understand the rule applicable in the premises, is not in accord with the recognized functions of an appellate tribunal.

Appellants' contention that inferences deducible from the evidence herein are dispelled as a matter of law by the positive testimony of defendant Steiner concerning the speed at which he was traveling, must fall before the rule which declares that inferences are not dispelled as a matter of law when the evidence in opposition to such inferences is weakened by improbabilities. (*Engstrom* v. *Auburn Auto Sales Corp.*, 11 Cal. (2d) 64, 70 [77 Pac. (2d) 1059].)

No complaint is made by appellants of the award for funeral and burial expenses, and the main attack is centered upon the award of $12,500 to the widow of the deceased. In this connection the record discloses that Grace Finley was happily married to decedent for more than 34 years. He was 57 years of age at the time of his death and was in robust health. The husband was industrious and hard-working. At the time of his death he and his wife had been operating a service station and lunch counter on a mountain highway near Coeur d'Alene, Idaho, from which they were realizing $150 per month during the winter and $300 per month during the summer season, or, as testified, the profits ran as high as $300 per month for four or five months of the year and $150 for the remaining period of each year. Decedent had a life expectancy of 16 years. The widow testified that she assisted her husband in the operation of the service station

business; that she served lunches, helped pump gasoline, and waited upon the customers. She further testified that after her husband's death she found herself unable to operate the business alone and sold the same for $450.

■ In actions of this type the recovery is limited to pecuniary loss and "such damages may be given as under all the circumstances of the case may be just". (Code Civ. Proc., sec. 377.) While damages recoverable are only for the pecuniary loss suffered, that loss includes the deprivation of the comfort, protection and society of the deceased (*Clark* v. *Tulare Lake Dredging Co.*, 14 Cal. App. 414 [112 Pac. 564]); and loss of comfort, protection and society not only is a proper element of damages, but is by no means to be classed as compensable by merely nominal damages. (*Johnson* v. *Southern Pac. R. Co.*, 154 Cal. 285 [97 Pac. 520].) It is true that the pecuniary loss suffered from the last-named cause is difficult to measure in mere dollars and cents, and therefore must, with the whole question of damages, be left to the good sense and sound discretion of the trial judge or jury, to be exercised in the light of all the circumstances of the case. ■ The power of an appellate court to control the amount of damages awarded arises only when the facts before it are such as to suggest passion, prejudice or corruption on the part of the trial court or jury making the award. (*Morris* v. *Standard Oil Co.*, 188 Cal. 468 [205 Pac. 1073]; *Bisinger* v. *Sacramento Lodge No. 6*, 187 Cal. 578 [203 Pac. 768]; *Hale* v. *San Bernardino etc. Co.*, 156 Cal. 713 [106 Pac. 83]; *Webster* v. *Harris*, 119 Cal. App. 46 [6 Pac. (2d) 88].)

■ With reference to the award of $1,000 to the decedent's daughter, the record shows that she was 34 years of age, married, and the mother of two small children. Her husband was working part time. During the 16 years of her married life she was the recipient of $100 each year from the decedent, which money was sent her to assist in the purchase of clothing and other necessities of life. With decedent's life expectancy of 16 years, an award of $1,000 cannot be regarded as excessive. After a review of the decisions of appellate courts of this state in similar cases, we cannot hold that the damages awarded in this case were excessive, nor can we say, under all the facts and circumstances here present, that the damages are so outrageously excessive as to suggest at first blush passion, prejudice or corruption.

Therefore they cannot be set aside on appeal. (*Conner* v. *Henderson*, 108 Cal. App. 237, 242 [291 Pac. 641].)

For the foregoing reasons, that part of the judgment from which this appeal is taken must be, and it is, affirmed.

York, P. J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 30, 1940, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 3, 1940.