[Civ. No. 11445.   First Dist., Div. Two.—April 17, 1941.]

T. H. DARLING et al., Appellants, v. DREAMLAND BEDDING & UPHOLSTERING CO. (a Copartnership) et al., Respondents.

254

Sullivan, Roche & Johnson, Eustace Cullinan, Jr., and Willard Lee Pope for Appellants.

Bronson, Bronson & McKinnon, George M. Naus and Raymond O'Connor for Respondents.

STURTEVANT, J.—On April 26, 1939, the plaintiff Arlene Darling, while riding in an automobile which was being driven by the defendant Walter Carter, was injured in a collision. To recover damages for injuries sustained she and her husband commenced this action against Walter Carter, Dreamland Bedding & Upholstering Co., a copartnership, his employer, Jess Ernest Norris who was driving the other automobile, and Norris Printing Company, a copartnership, of which he was a member. The action was tried before the trial court sitting with a jury. At the end of the plaintiffs' case the trial court granted the motion for a nonsuit of Dreamland Bedding & Upholstering Co. and it granted a similar motion in favor of Walter Carter. As the other defendants had not demanded a jury, the jury was dismissed. The case proceeded as to the remaining defendants and on the final submission judgment was rendered in their favor as against the plaintiffs. From the judgments based on the orders of nonsuit the plaintiffs have appealed.

Prior to April 26, 1939, Dreamland Bedding & Upholstering Co., a copartnership, was engaged in manufacturing, renovating and selling furniture and home furnishings at its

place of business in San Francisco. The defendant Walter Carter was one of its employees acting as a salesman. He sold on commission and in the transaction of his business he operated his own automobile. The Norris Printing Company was engaged in the printing business at San Francisco and one member of the partnership was the defendant J. E. Norris.

Early in the morning on April 26, 1939, the defendant Walter Carter was driving south from San Francisco toward Burlingame. In the car riding with him were Mrs. R. M. Miller and the plaintiff Mrs. Arlene Darling. In the neighborhood of Mills Field Airport Carter's automobile collided with the automobile being driven by the defendant J. E. Norris.

It was the theory of the plaintiff Arlene Darling that she was a passenger in the car being driven by the defendant Carter and that he was responsible to her as a passenger. On the other hand it was the theory of the defendant Carter and Dreamland Bedding & Upholstering Co. that Mrs. Darling was a guest, that there was no evidence that Carter was intoxicated, or that he was guilty of wilful misconduct, and therefore the defendants were not liable.

It is statutory that a guest who accepts a ride in any vehicle upon the highway without giving compensation for such ride is limited in his right to recover for injuries sustained in an accident. (California Vehicle Code, sec. 403.) As stated in *McCann* v. *Hoffman,* 9 Cal. (2d) 279 [70 Pac. (2d) 909], at page 282, "A review of a few only of the numerous cases indicates that the nature of the compensation as contemplated by such a statute is as variable as the particular facts involved. Compensation has been deemed made: When the carriage is of a prospective purchaser of real estate or other customer riding in contemplation of the mutual business of the parties. (Citing cases.) . . . When otherwise a benefit of a tangible nature was conferred upon the driver or his principal by reason of the transportation. (Citing cases.)'' The parties to this appeal concede the foregoing propositions but they differ as to the application in the instant case. The plaintiffs stress the fact that we are considering an order of nonsuit granted at the end of the plaintiffs' case. They then earnestly call to our attention that on the afternoon of April 26, 1939, the defendant Carter was in the home of Mrs. Duff at Burlingame installing some new furniture he had recently

sold Mrs. Duff. While there Mrs. Miller called. Mrs. Duff introduced Mrs. Miller as a prospective purchaser of furniture. She was interested and Carter drove her to the place of business of Dreamland Bedding & Upholstering Co. There Carter showed the goods of the company to Mrs. Miller. Later Mrs. Miller stated that she had a friend, Mrs. Darling, one of the plaintiffs, who was interested in having some of her furniture done over. Mrs. Darling was engaged in conducting a beauty shop and an appointment was made to meet her that evening at 8:30. Mrs. Miller and Mr. Carter separated at about 6 P. M. agreeing to meet later. At the appointed hour Mrs. Miller and Mrs. Darling met Mr. Carter in the lobby of the Hotel St. Francis in San Francisco. For some hours they discussed furniture and furnishings—not all the time but much of the time. Each testified the purpose of the meeting was to discuss the purchase or repair of furniture. Some time after 12 midnight, acting upon Mr. Carter's request, Mrs. Miller and Mrs. Darling entered his automobile and he started to drive them to their homes. When in the neighborhood of Mills Field Airport the accident happened. Except as will be herein noted Mr. Carter was at all times acting within the scope of his employment. If the record contained no additional facts it is quite clear the plaintiffs had made a *prima facie* showing and were entitled to have their case submitted to the jury. (*Crawford* v. *Foster*, 110 Cal. App. 81, 82, 83 [293 Pac. 841]; *McCann* v. *Hoffman, supra.*) However the record discloses other facts and circumstances which the defendants vigorously stress and contend that the meeting at the St. Francis and the subsequent events were not matters of business but were a matter of social amenities and, as they argue, after Mrs. Miller and Mr. Carter temporarily parted at 6 P. M. the business of the day was done and all transactions thereafter were of a social nature.

Not controverting any of the facts just set forth, the defendants call to our attention that after meeting at the St. Francis intoxicating liquors were served. Mrs. Miller did not drink any of the intoxicating liquor but before dinner Mr. Carter and Mrs. Darling had a highball. During their dinner and before leaving the St. Francis those two each had two more highballs. Still later and when near Mills Field Airport, at the Skyway Cafe, they stopped and Mr. Carter

and Mrs. Darling each had another highball. While at the St. Francis as indicated above they had their dinners and participated in the dancing. Mr. Carter danced a couple of times with Mrs. Miller and a couple of times with Mrs. Darling. As pointing to the nature of the evening the defendants place much stress on a dinner menu that was introduced in evidence. On it Mrs. Darling had written, "To my darling Walt, Arlene"—Mr. Carter's name being Walter and Mrs. Darling's name being Arlene. It will be conceded at once that the facts recited in this paragraph tend to show a social event as distinguished from a business meeting. However one of the issues to be tried was the motive which prompted the parties to be present at the meeting in the St. Francis. That was a question of fact for the determination of the jury. The utmost that can be claimed by the defendants is that there was a conflict in the evidence as to what was the purpose of the meeting at the St. Francis Hotel. But on the determination of a motion for a nonsuit made at the end of the presentation of the case of the plaintiffs the powers of the trial court are quite limited. In *Mitchell Camera Corp.* v. *Fox Film Corp.*, 8 Cal. (2d) 192 [64 Pac. (2d) 946], at page 197, the court said: "On a motion for a nonsuit, if a plaintiff has presented evidence of so substantial a character that notwithstanding any conflict which would be raised by evidence produced by the defendant to the contrary it would support a judgment in his favor, the motion must be denied. The evidence must be taken most strongly against the defendant. 'Every favorable inference fairly deducible and every favorable presumption fairly arising from the evidence adduced must be considered as facts proved in favor of the plaintiff. Where evidence is fairly susceptible of two constructions, or if one of several inferences may reasonably be made, the court must take the view most favorable to the plaintiff. If contradictory evidence has been given it must be discarded. (*Estate of Arnold*, 147 Cal. 583 [82 Pac. 252].) The plaintiff must be given the benefit of every piece of evidence which tends to sustain his averments and such evidence must be weighed in a light most favorable to plaintiff's claim. (*Anderson* v. *Wickliffe*, 178 Cal. 120 [172 Pac. 381].) Evidence whether erroneously admitted or not, if relevant to the issues joined, must be given the credit and benefit of its full probative strength, and any question arising from the fact of varia-

tion between the evidence of the witnesses cannot be raised or considered.' (*Gregg* v. *Western Pac. R. R. Co.*, 193 Cal. 212, 216 [223 Pac. 553].)'' The orders granting the motions of nonsuit took from the jury its right to determine whether the meeting in the St. Francis was for business purposes, or whether the social events were merely incidental to such business purposes, or whether the meeting was purely social.

The judgments appealed from are reversed.

Nourse, P. J., and Spence, J., concurred.