[Civ. No. 19686. Second Dist., Div. Three. Jan. 7, 1954.]

VIVIANE M. FOLLANSBEE, Individually and as Executrix, etc., Plaintiff and Appellant, v. PHILIP G. H. BENZEN-BERG et al., Defendants and Appellants.

Wellborn, Barrett & Rodi, Karl B. Rodi and Owen F. Goodman for Plaintiff and Appellant.

Bauder, Gilbert, Thompson & Kelly for Defendants and Appellants.

VALLÉE, J.—Defendants Benzenberg, an individual, and Coberly, Inc., a corporation, appeal from a judgment in favor of plaintiff, as executrix of the estate of William U. Follansbee, III, deceased, in an action for his alleged wrongful death. Defendant Escobasa did not appeal. Plaintiff appeals from that part of the judgment denying her relief for expenses paid by her for medical treatment rendered to her deceased husband.

Defendant Coberly is a corporation engaged in business

in Los Angeles as a new car dealer of Mercury and Lincoln automobiles. It maintains a service and repair department for these makes of cars; and with every new car sold, a service policy for various recheck periods is furnished the buyer.

Defendant Benzenberg was a salesman employed by Coberly. His duties were to take care of prospective customers of Mercury automobiles who were referred to him. He handled sales until deliveries were effected. He also acquainted the purchasers with Coberly's service and repair facilities.

A few days prior to the accident, decedent telephoned Coberly with respect to the purchase of a new Mercury. The call was referred to Benzenberg. The latter thereupon undertook to sell decedent a new Mercury. He took him for a demonstration ride and showed him the available models and colors at the Coberly showroom. On Wednesday, February 14, 1951, decedent made a deposit of $500. Arrangements were made to complete delivery on the following Saturday.

On Saturday, February 17th, decedent went into the Coberly showrooms. Except for registration and licensing, the automobile he expected to purchase was ready for delivery. License plates cannot be secured for an automobile without the signature of the purchaser of the vehicle upon the license registration application. After looking at the automobile, decedent went into the business office and gave the office attendant a check for the balance of the purchase price. The purchase price included the charge made by the state for license and registration. A bill of sale was given decedent. Decedent signed the license plate application. It was customary for Coberly to attend to registrations. Benzenberg testified it was the practice of Coberly to secure license plates for and registration of the automobiles, and the procurement of plates "is handled routinely" by dealers. He also said an automobile sale is not complete, title does not pass, and "a buyer cannot move the car [from the dealer's premises] without the car being registered with the State." In nine-tenths of the cases, Coberly gives the customer paper plates, and asks him to come back later for the metal ones. In one-tenth of the cases, the plates are procured right away.

Decedent was offered the temporary paper plates; however, he expressed a desire to have permanent plates immediately attached to the automobile. Benzenberg offered to procure the metal plates. The office attendant furnished Benzenberg with the necessary papers and funds to enable him to obtain them. Before leaving the Coberly premises for the Auto-

mobile Club of Southern California—which, through arrangements with the Department of Motor Vehicles, issued permanant plates—Benzenberg informed decedent that the process would take about half an hour and suggested that he (decedent) accompany him rather than wait around the nearly vacant showroom. Decedent accepted the offer and the two proceeded in Benzenberg's car, the latter driving, to file the registration application and secure the license plates. A few moments later the accident occurred in an intersection collision between the automobile driven by Benzenberg and one driven by defendant Escobasa. Mr. Follansbee died on February 26, 1951.

Plaintiff, widow of Mr. Follansbee, brought the action as an individual, as one of his heirs, and as executrix of his will.

The court found: at the time of the accident the decedent was riding as a passenger, not as a guest, in the automobile driven by Benzenberg; Benzenberg and Coberly received benefit from the decedent for the ride during which the collision occurred; death resulted from injuries received in the accident; Benzenberg and Escobasa were negligent, and the negligence of each of them was a proximate cause of the injuries and death; Benzenberg was acting within the scope and course of his employment at the time of the accident.

## Defendants' Appeal

Coberly and Benzenberg do not attack the finding that both drivers were negligent and that the negligence of each driver was a proximate cause of decedent's injuries and death. Their only contention is that the court's findings that at the time of the accident the decedent was riding as a passenger, not as a guest, and that they received benefit from the decedent for the ride, are contrary to the evidence as a matter of law.

Under section 403 of the Vehicle Code, one who is a guest in an automobile of another cannot recover against the driver for injury or death unless he establishes that the injury or death proximately resulted from the intoxication or wilful misconduct of the driver; whereas one who is a passenger can recover if the driver was simply negligent and the negligence was a proximate cause of the injury or death. ■ The burden of proving that decedent was a passenger and not a guest was on plaintiff since it was not claimed that the death resulted from the intoxication or wilful misconduct of Benzenberg. (*Gosselin* v. *Hawkins*, 95 Cal.App.2d 857, 860 [214 P.2d 110]; *Whittemore* v. *Lockheed Aircraft Corp.*, 65 Cal.App.2d 737, 740 [151 P.2d 670].)

Whether a person riding with another was a passenger or a guest is to be determined on the basis of the answer to the factual question: Did the rider confer a benefit on the driver for the ride? (*Malloy* v. *Fong*, 37 Cal.2d 356, 376-378 [232 P.2d 241].) It is for the trier of fact to determine whether the rider conferred a benefit or whether the ride was merely of a social nature. (*Darling* v. *Dreamland B. & U. Co.*, 44 Cal.App.2d 253, 257 [112 P.2d 338]; *Sullivan* v. *Richardson*, 119 Cal.App. 367, 371 [6 P.2d 567]; *Gosselin* v. *Hawkins*, 95 Cal.App.2d 857, 861 [214 P.2d 110].) Once the trier of fact has determined the fact of benefit, the province of the reviewing court is simply to examine the record to determine whether this factual finding is substantially supported.

Section 403 of the Vehicle Code, in effect, defines a guest as a person who "accepts a ride . . . without giving compensation for such ride." A passenger is one who gives compensation for a ride. The term passenger is not limited to a person paying for his transportation in cash or its equivalent, but includes in its scope a person who gives such recompense for a ride as may be regarded as compensation therefor—that is, a return which may make it worth the other's while to furnish a ride. (*Malloy* v. *Fong*, 37 Cal.2d 356, 377 [232 P.2d 241]; *Crawford* v. *Foster*, 110 Cal.App. 81, 84 [293 P. 841].) To constitute compensation, it is not necessary that it be established that the compensation received by the driver was given "for such ride" in the sense that the rider obtained transportation for some independent purpose of his own. Where the trip was not primarily for a social purpose, it is sufficent to show that the driver was to derive a benefit from the transportation. (*Kruzie* v. *Sanders*, 23 Cal.2d 237, 242 [143 P.2d 704].) An anticipated or prospective profit is a benefit and may be as effectual as an immediate or direct compensation. (*Piercy* v. *Zeiss*, 8 Cal.App.2d 595, 598 [47 P.2d 818]; *Crawford* v. *Foster* 110 Cal.App. 81, 84-88 [293 P. 841]; *Sumner* v. *Edmunds*, 130 Cal.App. 770, 778-780 [21 P.2d 159].)

If a driver receives a benefit through the acceptance of a ride, the fact that a like benefit might have been obtained in some other place or manner can make no difference. The acceptance of the ride furnished Benzenberg with an opportunity to create good will with decedent which might otherwise not have been accorded. An opportunity thus obtained is a direct and substantial benefit, and may well be as beneficial to the driver where he is selling something not neces-

sarily connected with the ride as where he is demonstrating the car itself to a prospective purchaser or using it to take a prospect to look at a piece of land. The hope of future business is present, and such an opportunity is a real benefit to a salesman even though another place for his labors might have been chosen. (*Piercy* v. *Zeiss,* 8 Cal.App.2d 595, 599 [47 P.2d 818].) It is enough that there is "any" consideration for the ride. (*Haney* v. *Takakura,* 2 Cal.App.2d 1, 6 [37 P.2d 170, 38 P.2d 160].)

■ It is admitted that decedent did not pay anything for the ride, but defendants must be deemed to have received compensation if decedent was taken along because it was considered by them to be to their business advantage that he be taken to the automobile club. (*Piercy* v. *Zeiss, supra.*) It was the general practice of Coberly to attend to the registration of the automobiles it sold. In one-tenth of the cases, it procured metal plates "right away" and did not give the customer paper plates. Benzenberg testified that a sale is not complete and a buyer cannot move the car without its being registered with the state. There is nothing to suggest a social relationship between decedent and Benzenberg or that decedent or Benzenberg looked upon the former's trip in the automobile as one to be taken merely for pleasure. The ride was one in which Benzenberg was promoting Coberly's business interests.

While it may not have been any part of the agreement of sale that decedent was to accompany Benzenberg to the automobile club, it does clearly appear that he was attending to the business of concluding the purchase and acceptance of the automobile. Coberly maintains a service and repair department for Mercury and Lincoln automobiles. The service checkups given with every new car sold is to entice customers to bring their cars to Coberly's garage and thereby acquaint them with its facilities so they will patronize it later. Something more was involved than the sale of the automobile: there was the element of continued patronage. It cannot be said that it is any less important to maintain the good will of, and to continue business with, a customer than it is to give a demonstration of an automobile to a prospective new customer. (*Whittemore* v. *Lockheed Aircraft Corp.,* 51 Cal. App.2d 605, 612 [125 P.2d 531].)

There are several tenable reasons why the court was warranted in concluding that the business transaction had not terminated; that a business rather than a social purpose was the motivating influence of the trip; and that there was a

tangible benefit to Coberly. (*Darling* v. *Dreamland B. & U. Co.*, 44 Cal.App.2d 253 [112 P.2d 338]; *Duclos* v. *Tashjian*, 32 Cal.App.2d 444, 450 [90 P.2d 140]; *Whittemore* v. *Lockheed Aircraft Corp.*, 51 Cal.App.2d 605 [125 P.2d 531].) There is substantial evidence to support the finding that plaintiff was a passenger.

### Plaintiff's Appeal

Plaintiff appeals from that part of the judgment denying her relief for expenses paid by her for medical treatment rendered to her deceased husband.

Mr. Follansbee died on February 26, 1951, nine days after the accident. From the time of the accident to the time of death he was unconscious. The court found that because of the injuries sustained by decedent, plaintiff, individually, incurred and paid reasonable expenses for ambulance, medical care, nursing care, and hospital services rendered to decedent prior to his death as follows: ambulance, $12.50; medical care, $550; nursing care, $189; hospital services, $456.05; total $1,207.55. It concluded: "On the basis of the pleadings herein, the plaintiff is not entitled to recover for moneys expended by her for ambulance service, medical care, nursing care and hospitalization of the decedent, William U. Follansbee III." We refer to these items as medical expenses or medical services.

There is some discussion in the briefs as to whether plaintiff has a right of action against defendants for the medical expenses under section 956 of the Civil Code or section 377 of the Code of Civil Procedure. Neither section is applicable. Civil Code, section 956, enacted in 1949, insofar as pertinent, provides that a thing in action arising out of a wrong which results in physical injury to the person shall not abate by reason of the death of the person injured, and that "When the person entitled to maintain such an action dies before judgment, the damages recoverable for such injury shall be limited to loss of earnings and expenses sustained or incurred as a result of the injury by the deceased prior to his death, and shall not include damages for pain, suffering or disfigurement, nor punitive or exemplary damages, nor prospective profits or earnings after the date of death. The damages recovered shall form part of the estate of the deceased." At the time section 956 was enacted, section 573 of the Probate Code was amended to make such actions maintainable by administrators or executors of the deceased person who would have been plaintiff had he lived. (See also Veh. Code, § 402(g).) Thus, the right of action given by section 956

is in plaintiff as the executrix of the will of decedent, and the damages are limited to loss of earnings and expenses sustained or incurred as a result of the injury by the *decedent* prior to his death. Section 956 provides for the survival of a right of action that the decedent had for expenditures made by him for medical expenses. Here plaintiff is seeking to recover medical expenses which she individually incurred and paid. These medical expenses do not come within section 956.

Code of Civil Procedure, section 377, gives a right of action for wrongful death to the heirs or personal representatives of the decedent. At the time Civil Code, section 956, was enacted, section 377 was amended to provide that the damages recoverable thereunder "shall not include damages recoverable under Section 956 of the Civil Code." An action for wrongful death is for damages caused to the heirs. (*Fiske* v. *Wilkie,* 67 Cal.App.2d 440, 444 [154 P.2d 725].) The damages recoverable are the pecuniary loss sustained by the heirs by reason of the decedent's death. (*Morgan* v. *Southern Pac. Co.,* 95 Cal. 510, 516 [30 P. 603, 29 Am.St.Rep. 143, 17 L.R.A. 71]; *Luis* v. *Cavin,* 88 Cal.App.2d 107, 116 [198 P.2d 563].) Expenditures made for an injured person because of the injury are not, in an action brought by his heirs, elements of their damage. (*Fitzgerald* v. *Quinn,* 131 Cal.App. 457, 461 [21 P.2d 656]. See *Salmon* v. *Rathjens,* 152 Cal. 290, 301 [92 P. 733]; 25 Cal.L.Rev. 170, 174.) The medical expenses paid by plaintiff are not recoverable in the action insofar as damages are sought for the wrongful death of the decedent.

The court apparently felt that " [o]n the basis of the pleadings" plaintiff, as an individual, is not entitled to recover the moneys expended by her for medical expenses. We think this is too narrow and too technical a view of the pleadings. As we have said, plaintiff brought the action as an individual, as an heir, and as executrix. The complaint contains five counts: the first for damages against Benzenberg and Escobasa; the second for damages against Benzenberg; the third for damages against Escobasa; the fourth for damages against Coberly, Benzenberg, and Escobasa; the fifth for damages against Coberly and Benzenberg. Each count contains an allegation that the medical services were required by decedent and that plaintiff, in her individual capacity and not as executrix, paid the amounts found by the court to have been expended by her to her damage in the sum of $1,207.55. Coberly did not demur. Benzenberg did not demur on the ground there was a misjoinder of parties plaintiff, or

on the ground that several causes of action had been improperly united or not separately stated. These objections appeared on the face of the complaint, and defendants waived them by failing to raise them by demurrer. The only fault in the complaint is that plaintiff mingled an alleged cause of action in her individual capacity for the medical expenses with causes of action in her representative capacity under Civil Code, section 956, and as an heir under Code of Civil Procedure, section 377. If plaintiff has a right of action for the medical expenses she should not be denied relief for this defect in the complaint.

 Can a wife who pays for medical services for her husband which she is legally obligated to pay, recover the amount thereof from a person whose negligence was a proximate cause of the injury necessitating the services?

*Nitta* v. *Haslam*, 138 Cal.App. 736 [33 P.2d 678], was an action by a husband and minor children for the wrongful death of his wife and their mother. There, as here, the pleader mingled allegations of expenditures for medical care, hospital expenses, and nurse's services incurred by the husband (here the wife) prior to death, with the cause of action for wrongful death. The judgment included the medical expenses. On appeal the defendants objected to the inclusion of these items in the judgment because they were incurred prior to death and were not recoverable in an action for damages resulting from the death of the wife. The court said the items complained of were borne by the husband individually and he had a separate cause of action against the defendants to recover them. It was held that the items were not recoverable in an action for wrongful death; that the husband should have set up in a separate count of the complaint a cause of action for these damages; but that since there had been no special demurrer or motion to strike, the judgment would not be reversed "because two causes of action are commingled in a single count and are not separately stated." The law as thus stated was not affected by the enactment of Civil Code, section 956, or the 1949 amendments of Code of Civil Procedure, section 377, as argued by defendants. As we have noted, section 956 provides for survival of certain tort actions and for the recovery of damages suffered by the deceased prior to death, and section 377 provides for actions for wrongful death. There is no survivability involved in the phase of the case relating to plaintiff's individual medical expenses nor are they recoverable damages for wrongful death.

A husband can recover damages sustained by him for the expense of caring for his injured wife. (Code Civ. Proc., § 427; *Walling* v. *Kimball*, 17 Cal.2d 364, 371 [110 P.2d 58]; 25 West's Cal.Dig. 384, § 209(3).) The expenses paid by plaintiff are common necessaries of life. (*Odone* v. *Marzocchi*, 34 Cal.2d 431, 439 [211 P.2d 297, 17 A.L.R.2d 1109]; *Heaton* v. *Justice's Court*, 19 Cal.App.2d 118, 123 [64 P.2d 1004]; *Evans* v. *Noonan*, 20 Cal.App. 288, 292 [128 P. 794].) The wife is liable for the necessaries of life furnished to the husband while the parties are living together. (Civ. Code, § 171; *Wisnom* v. *McCarthy*, 48 Cal.App. 697, 701-702 [192 P. 337].)

There is no valid reason apparent for not allowing a wife to recover damages sustained by her for the expense of caring for her injured husband when he is unable from infirmity to pay such expenses himself. The law should not deny to the wife the redress which it affords to the husband. The old common law rule that a wife had no right of action of this character obtained on the theory that the wife's personality merged in that of the husband's, that she had no right to hold property separate and apart from her husband, and had no right to sue in her own name. This hollow, debasing, and degrading philosophy, which has pervaded judicial thinking for years, has spent its course. These archaic notions no longer obtain. "So prone are the courts to cling to consuetudinary law, even after the reason for the custom has ceased or become a mere memory, that it has required hundreds of years to obtain the meed of justice for married women." (*Bernhardt* v. *Perry*, 276 Mo. 612 [208 S.W. 462, 470, 13 A.L.R. 1320].) The legal status of a wife has changed. Her legal personality is no longer merged in that of her husband. A husband has no longer any domination over the separate property of his wife. A wife may sue in her own name without joining her husband in the suit. Generally a husband and wife have, in the marriage relation, equal rights which should receive equal protection of the law. When the reason for the rule ceases, so should the rule. (Civ. Code, § 3510.) No one should suffer by the act of another. (Civ. Code, § 3520.) For every wrong there is a remedy. (Civ. Code, § 3523.) Every person who suffers detriment from the unlawful act or omission of another may recover from the person in fault a compensation therefor in money. (Civ. Code, § 3281.) Detriment is a loss or harm suffered in person or property. (Civ. Code, § 3282.) The

rule which gives a husband a right of action for damages sustained by him for the expense of caring for his injured wife, in view of the present legal status of the wife, should apply to her equally with the husband. Plaintiff's loss arose directly from the tort of defendants.

The rule as stated in Corpus Juris Secundum is that "Where the wife has been compelled to expend money from her personal estate, as a proximate result of injuries negligently inflicted on her husband by a third person, for which he cannot recover, she may recover such sums under statutes giving her the right to sue in her own name." (41 C.J.S. 901, § 404.)

In *McDaniel* v. *Trent Mills*, 197 N.C. 342 [148 S.E. 440], it was held that where a husband was injured through the negligence of a third party, the wife was not a volunteer in expending money out of her personal estate as a proximate result of such injury, and that she could recover such expenditures from the negligent third party, the court saying (148 S.E. 441) : "The family in its integrity has been the foundation, as well as the bulwark, of American institutions from the beginning of our history. In fact, it is the very cradle of civilization, with the future welfare of the commonwealth dependent, in large measure, upon the success of its administration. Hence, when a wife, under such impulsion and in obedience to its command, comes to the aid of her husband with the expenditure of her separate funds, she is not to be regarded as a volunteer, but as one acting within her conjugal rights, and it is but meet that, under such circumstances, the wrongdoer who has forced her to part with her means should respond in damages to the extent of the reasonable obligations thus assumed and paid by her as a direct result of his tortious acts.

"While the common-law principle of unity of husband and wife and the modern doctrine of complete duality of personalities may clash somewhat in yielding to this result, still, we think the conclusion is supported by the logic of life, if not by the logic of syllogism; and it should be remembered that law is bigger than logic, life is bigger than law, and the function of judicial decision is to state, as near as possible, in terms of law, the meaning of life in action. This middle course, as it may be called, is perhaps a hybrid between the old and the new doctrines just mentioned, or a mixture of the two, but, if so, it comes from holding fast to that which is good in the old and pressing forward to that which is helpful in the

new, a practice heretofore commended by an authority on domestic relations, a great lawyer, and one of the apostles.''

The facts in *Hansen* v. *Hayes*, 175 Ore. 358 [154 P.2d 202], were identical with those in the case at bar except that there the personal representative of the deceased's estate brought an action for wrongful death and later the widow brought the reported action for medical expenses which she had incurred prior to the death of her husband in an effort to save his life and for funeral expenses. The court said (154 P.2d 205, 206, 207, 209, 218.): ''The legal theory of the plaintiff is that under the family expense statute the plaintiff widow became liable for the medical and funeral expenses and that such liability was tortiously imposed upon her by the defendant's negligence which had made the expense necessary. It is true that the negligent force of the defendant was directed only at the deceased, but a previous decision of this court suggests by analogy that the negligence of a defendant may give rise to tort liability in favor of one who acts to his damage by reason of an injury directly done to another. . . .

''Having concluded that by reason of the family expense statute the plaintiff became liable for the amount of her husband's medical and funeral expenses and that the negligence of the defendant was the proximate cause of direct damage to the plaintiff in the amount of such expenses paid by her, it would seem to follow that he should respond in damages on the general principles of the law of torts, not for a wrong done to the deceased, but for the direct damage to the plaintiff. Although there are some authorities to the contrary, the general rule appears to be as follows: 'In actions for injury to the person, necessary and reasonable expenses for medical attention, medicine, and nursing may be recovered for, and this rule applies to expenses which may have been incurred because of injuries to a person for whom plaintiff is legally responsible.' 17 C.J., Damages, § 128, p. 801; 25 C.J.S., Damages, § 47, subd. b, p. 526.

''Since the statutory liability of the wife for the husband's medical and funeral expense is similar to the common law liability of a husband for such expense incurred for the wife, we find a persuasive analogy in the authorities which permit the husband to recover against the negligent tort-feasor for expense causd him by the injury of the wife. . . .

''At common law a parent and guardian has a similar right to recover from the negligent wrongdoer for expenses incurred by the reason of the injury of a minor child. . . .

"Excluding from our consideration any question relative to the effect of the death statute and the action which was brought under it, we think the better reasoned authorities would sustain the right of the wife in the case at bar to recover for both medical and funeral expense. . . .

"If, as we have held, the defendant became liable in tort to the plaintiff, the mere existence of a right on the part of the plaintiff to reimbursement from another source (the estate of her husband) would not wash out the defendant's direct liability to her. She would be under no obligation to gratuitously free the defendant from liability by pressing her claim against her husband's estate and thereby perhaps decreasing the inheritance of the heirs. . . .

"Since medical expenses incurred previous to death were not recoverable in the action brought by the administrator under O.C.L.A. § 8-903, it follows that plaintiff was entitled to recover them in the present action as previously set forth." It will be observed that mention was made that the action was for funeral expenses as well as medical expenses. The court held that the funeral expenses were recoverable in the action for wrongful death and therefore could not be recovered in the reported action. (See also *Hipp* v. *E. I. Dupont de Nemours & Co.,* 182 N.C. 9 [108 S.E. 318, 18 A.L.R. 873]; *Thompson* v. *City of Bushnell,* 346 Ill.App. 352 [105 N.E.2d 311]; *Hitaffer* v. *Argonne Co.,* 183 F.2d 811.)

We conclude that plaintiff, as an individual, is entitled to recover the moneys expended by her prior to the death of decedent for medical expenses found by the court to be $1,207.55.

In view of the finding of the court, a reversal of that part of the judgment appealed from by plaintiff with directions is appropriate.

The judgment, insofar as it denies plaintiff relief for moneys expended by her for medical care, ambulance service, nursing care, and hospital services, is reversed with directions to the superior court to render judgment for plaintiff, as an individual, for said expenses in the sum of $1,207.55. In all other respects the judgment is affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

Defendants and appellants' petition for a hearing by the Supreme Court was denied March 3, 1954.