Caroline M. Saunders, Plaintiff-Appellee, v. Clete Schultz, Defendant-Appellant.

Gen. No. 11,194.

Second District, First Division.

April 17, 1959.

Rehearing denied and opinion modified October 7, 1959.

Released for publication October 7, 1959.

403

Davis, Morgan & Witherell, of Peoria, for defendant-appellant.

Robert S. Calkins, of Peoria, for appellee.

JUSTICE DOVE delivered the opinion of the court.

On the morning of August 1, 1955 between 7:30 and 8 o'clock, Clete Schultz was driving his Studebaker Farm Truck in a westerly direction on Lancaster Road, a rural black top highway some 15 or 16 miles west of Peoria. At the same time Charles L. Saunders was driving his motorcycle in an easterly direction on the same road. As Mr. Schultz proceeded in his own lane of traffic, he shifted into low gear, reduced the speed of his truck and started to make a left turn. He had proceeded to a point where the front end of his truck was about to enter the gate into his bean field on the south side of the highway and the balance of his truck had cleared about one-half of the east bound traffic lane when the motorcycle, which Mr. Saunders was driving, collided with the rear end of his truck. Mr. Saunders was thrown from his motorcycle and sustained injuries from which, on September 14, 1955, he died.

On November 14, 1956 the instant complaint was filed by Carolyn M. Saunders, widow of Charles L. Saunders to recover for nursing, physicians and surgical service, hospital bills and the amount expended by her for funeral and ambulance services together with $50 paid for a lot in which the remains of the deceased were interred. This complaint alleged, among other things, the marriage of the plaintiff and decedent in 1945 and the continued existence thereafter of said relationship until the husband's death; that their

404

family consisted of themselves and two children and that they lived together as one household or family.

The complaint then averred that the plaintiff was in the exercise of due care and caution for the safety of her property upon the occasion in question and charged defendant with various acts of negligence which occasioned the injuries decedent received. It was charged that his injuries required immediate and extensive medical care and treatment and it was averred that as a direct result of the injuries which her husband received and by virtue of the Family Expense Statute (Ill. Rev. St. 1955 Chap. 68, sec. 15) she became personally liable for the ambulance, hospital, nursing, physicians' and surgeons' services rendered decedent during his lifetime and after the collision and also for his funeral, burial expenses, and coroner's fees. Her complaint demanded judgment for $5,196.65.

The defendant answered admitting many of the allegations of the complaint. Defendant, however, denied all charges of negligence, denied that under the provisions of the Family Expense Statute plaintiff was entitled to recover in this action and as a separate defense defendant averred that decedent, at and before the occurrence in question, was guilty of negligence which proximately and directly contributed to the collision which resulted in decedent's injuries and death. The allegations set forth in this separate defense were denied by plaintiff's reply. The issues made by the pleadings were submitted to a jury resulting in a verdict and judgment in favor of the plaintiff and against the defendant for $4862.90 and costs, from which defendant appeals.

Counsel for appellant state that under our Family Expense Statute a wife may sue and recover from a wrongdoer, money expended by her, for medical expenses and services rendered her husband as a result of non-fatal injuries inflicted upon her husband by

405

such wrongdoer. Counsel further state that it is also clear that if the husband dies from some cause other than the wrongful injury, the cause of action for personal injury to the wife survives and she can continue to maintain her action for her own damages. It is just as clear continue counsel "that where the spouse dies from the wrongful injury complained of, not only his right of action dies with him but also the right of his spouse to recover for damages prior to his death." Counsel insist that the only right of action that subsists is the action of his personal representative to recover the pecuniary loss to his next of kin under the Wrongful Death Act. (Ill. Rev. St. 1955, Chap. 70, sec. 1.)

In 42 A.L.R.2d 843 following the report of Follansbee v. Benzenberg, 122 Cal.App.2d 466, 265 P.2d 183, is an annotation dealing with the right of a wife to recover in her individual capacity for medical expenses of her husband injured by a third person's negligence. The annotator states that the question has arisen in but few cases and that in a majority of them it has been recognized that where the married woman statutes permit a wife to bring an action in her own name, she may recover in her individual capacity from the tortfeasor for medical or hospital expenses for her husband's injuries if she was liable therefor to the physician or hospital or if she had paid such expenses out of her personal estate. (42 A.L.R.2d 843.)

It appeared in Follansbee v. Benzenberg, 122 Cal. App.2d 466, 265 P.2d 183, 43 A.L.R.2d 832, supra, so far as material to the decision in the instant case, that the husband of the plaintiff was riding as a passenger in an automobile driven by the defendant Benzenberg on February 17, 1951. As a result of an intersection collision between the automobile driven by Benzenberg and one driven by one Escobasa, the husband of the plaintiff was rendered unconscious and died nine days later as a result of the injuries he received. The trial

406

court found that because of the injuries her husband received as a result of the collision the plaintiff incurred and paid $1207.55 which was a reasonable sum for ambulance and hospital services, medical care and nursing but that she was not entitled to recover for those items. In reversing that judgment the court held that a wife is legally obligated to pay for such services and having paid for them is entitled to recover from a person whose negligence was a proximate cause of the injury necessitating the services. In the course of its opinion the court quoted from 41 C. J. S. Husband and Wife, sec. 404, p. 901 where it is said: "Where the wife has been compelled to expend money from her personal estate, as a proximate result of injuries negligently inflicted on her husband by a third person, for which he cannot recover, she may recover such sums under statutes giving her the right to sue in her own name."

The Follansbee case quoted extensively from McDaniel v. Trent Mills, 197 N. C. 342, 148 S. E. 440 and Hansen v. Hayes, 175 Ore. 358, 154 P.2d 202 and cited, among other cases, Thompson v. City of Bushnell, 346 Ill. App. 352, 105 N.E.2d 311. Counsel for appellant, in referring to the Thompson case and to another Illinois case, Nixon v. Ludlam 50 Ill. App. 273 state that they "are two isolated and enigmatic appellate court decisions"; that the Nixon case has only been referred to once and that the Thompson case has "never been reviewed, cited or referred to by any reported Illinois decision." Apparently counsel do not agree with what these cases hold and find nothing in either case to support their contention.

The Nixon case, supra was an action by a husband against a surgeon to recover damages for an alleged unskillful operation performed by defendant upon the wife of the plaintiff. The trial court sustained a demurrer to the declaration and dismissed the action on

the ground that the declaration stated a case of the instantaneous death of the wife. In reversing that judgment the court called attention to the fact that at common law no civil action could be maintained for the death of a human being caused by the wrongful act or negligence of another; that it is only by virtue of the statute (Ill. Rev. St. Chap. 70, sec. 1) that a civil action may be maintained for damages suffered subsequently to and in consequence of the death which action can only be maintained by the personal representative of the deceased. Continuing the court then said: (pp. 275–276) "The surviving husband, as such can not maintain an action for such damages. He is not, however, debarred either at common law or by the statute, from a recovery of those damages which accrued prior to the death. Indeed his right of recovery for all damages accruing to him before the death is well recognized and his right of action for such damages does not abate by her death. Hyatt v. Adams, supra (16 Mich. 179). Therefore, it appearing by the declaration that the wife survived the operation for the space of about two days, it was error to sustain the demurrer. The right to recover for the loss of her services during the time that she survived the operation, and for any consequent expense he was put to in caring for and treating her during the time she languished, can not be questioned."

In Thompson v. City of Bushnell, 346 Ill. App. 352, the complaint alleged that the husband of plaintiff died on February 23, 1950 as a result of a gas explosion which occurred in their home on July 9, 1948; that the gas mains were owned by the City and that the explosion was caused by the negligence of the City. By two counts of her complaint the widow of decedent sought to recover medical, hospital, nursing and funeral expenses furnished her deceased husband prior to his death. The trial court dismissed these counts of the complaint. In reversing the judgment of the trial court

408

the appellate court of the Third District quoted the applicable section of the statute to the effect that the expenses of the family shall be chargeable upon the property of both husband and wife, or either of them, in favor of creditors therefor and in relation thereto they may be sued jointly or separately. (Ill. Rev. St. Chap. 68, sec. 15.) The court then cited Nixon v. Ludlam, 50 Ill. App. 273 and quoted quite extensively from Hansen v. Hayes, 175 Ore. 358, 154 P.2d 202 and held that the dismissed counts stated a cause of action. While it was held in the Nixon case that there could be no recovery by the husband for funeral expenses incurred by him because his wife died as a result of an alleged unskillful surgical operation performed by defendant, there is authority to the contrary (Mattfeld v. Nester, 226 Minn. 106, 32 N.W.2d 291, 3 A.L.R.2d 909 and cases cited in the annotation following the report of that case in 3 A.L.R.2d 909). The conclusion arrived at in both the Nixon and Thompson cases is not, puzzling, inexplicable, perplexing, mysterious or enigmatic as counsel suggest.

Hansen v. Hayes, 175 Ore. 358, 154 P.2d 202 was an action by the widow of Peter Alfred Hansen to recover medical and funeral expenses incurred by her in connection with the injury and ultimate death of her husband which resulted from the grossly negligent operation, by the defendant, of the automobile in which her husband was riding as a guest passenger of the defendant. The case was tried by the court, without a jury resulting in a judgment in favor of the plaintiff in the amount of medical expenses incurred by her in an effort to save her husband's life. The trial court also rendered a judgment in favor of the defendant against the plaintiff on her claim for funeral expenses. In affirming both judgments, the supreme court of Oregon stated that the legal theory of the plaintiff is that under the Family Expense Statute the plaintiff widow

409

became liable for the medical and funeral expenses furnished her husband and that such liability was tortiously imposed upon her by defendant's negligence which had made the expense necessary. The court then said that while the negligent force of the defendant was directed only at the deceased, it gives rise to tort liability in favor of one who acts to his damage by reason of any injury directly done to another. The court then cited the Oregon family expense statute and held that medical and funeral expenses were classed as expenses of the family within the meaning of the statute and said that similar rulings had been made under the Illinois Statute which is substantially the same as the Oregon statute, citing Leininger v. Thoma, 255 Ill. App. 8; Lifschitz v. Chicago, 194 Ill. App. 488; Walcott v. Hoffman, 30 Ill. App. 77; Younkin v. Essick, 29 Ill. App. 575; Glaubensklee v. Low, 29 Ill. App. 408 and Cole v. Bentley, 26 Ill. App. 260.

The Oregon Court then concluded that by reason of the family expense statute the plaintiff became liable for the amount of her husband's medical and funeral expenses and that the negligence of the defendant was the proximate cause of direct damage to the plaintiff in the amount of such expenses paid by her and that the defendant shall be held to respond in damages on the general principles of the law of torts, not for a wrong done the deceased, but for the direct damage to the plaintiff.

It appeared in the Hansen case that a previous wrongful death action had been brought under the Oregon Act by H. F. Edwards as administrator of the estate of Peter Alfred Hansen and he had recovered a judgment against the defendant therein. Upon the trial of that case, for the purpose of enhancing the general damages, evidence of medical and funeral expenses rendered the decedent was offered which offer was rejected by the trial court. The supreme court held that

the ruling of the trial court in that case did not alter the situation in the instant case and stated that if the expense items sued for by the wife were provable to enhance damages in the administrator's action, the plaintiff cannot recover them in this case but if they were not recoverable in the first action then they could be recoverable by the wife. The court then held that medical expenses incurred prior to death were not recoverable under the wrongful death action but could be recovered by the wife in a separate proceeding. The court further held that funeral expenses could be recovered in an action under the death statute and accordingly affirmed the judgments of the trial court.

In Adams v. Malik, an Ohio Court of Appeals case reported in 155 N.E.2d 237 it was held that an administratrix could maintain an independent action for funeral expenses against an alleged tort-feasor whose conduct proximately caused decedent's death. The court said that the property in the estate of the deceased was injured to the extent of the amount charged against it for the payment of funeral expenses tortiously induced; that actions which survive death, under the Ohio survival statute, may include charges for funeral expenses for the reason that, where property is diminished by a charge against it or a payment out of it, to satisfy a legal obligation which obligation was induced by the tort of another, there is an injury to property to the extent of the lessening in value of the estate.

In Seymour v. The Union News Co., 217 F.2d 168 the United States Circuit Court of Appeals, Seventh Circuit, in reversing the judgment of the United States District Court for the Northern District of Illinois, Eastern Division cited, with approval, Thompson v. City of Bushnell, 346 Ill. App. 356, 105 N.E.2d 311 supra and held that a complaint of a wife to recover money which she expended for medical and hospital bills incurred on behalf of her husband who became ill

411

after partaking of alleged impure and tainted food purchased at defendant's restaurant, stated a good cause of action being based upon the Family Expense Statute of this state.

Under the authorities herein referred to we are clearly of the opinion that plaintiff has a right against the defendant which can be asserted in this separate proceeding. The cause of action here asserted by the plaintiff is for the separate wrong done to her by the defendant. Plaintiff's husband of course, had a cause of action against defendant to recover the damages he sustained. Upon his death that cause of action was extinguished and the wrongful death action, to his personal representative, is available, as provided by the Injuries Act. Appellant's citations to cases under the Injuries Act are therefore, not pertinent and need not be discussed.

Counsel's statement that the holdings in the Nixon and Thompson cases, supra, are "wholly repugnant" to the decisions under the Injuries Act is not borne out by an examination of the cases. It is well settled in Illinois that the same tortious act may give rise to more than one cause of action (Clancey v. McBride, 338 Ill. 35) and this rule was recognized by this court in Periard v. Nelson, 14 Ill.App.2d 566 where we held that an administrator in addition to being able to maintain an action for wrongful death could also bring an action for property damage sustained by decedent when his motor vehicle was damaged in the accident which resulted in the death of plaintiff's intestate. Counsel's broad assertion that the instant case is "bottomed upon an untenable theory in Illinois" and counsel's insistence that a widow has no right to recover expenses incurred by her as the result of the alleged wrongful death of her husband and counsel's suggestion that the Thompson and Nixon's decisions "are dead wrong and should not be followed," are not supported by the cases.

412

During the thirty-four days following the accident plaintiff's husband was the recipient of various services and the following expenses were incurred therefor, Ambulance, $25; Nursing $1218; Physician $147; Surgeon $600; Hospital $1889.90; Funeral $933 together with a burial space in the cemetery $50. These several items aggregate, $4862.90 which is the amount of the judgment in this case. The evidence is that prior to the trial the nursing services, ambulance and burial space had been paid by plaintiff who had also paid $586 on the hospital bill and $533 on the funeral bill, so that at the time the case went to the jury there remained $400 unpaid on the funeral bill, $1303.90 unpaid on the hospital bill and the fees to the physician and surgeon.

Plaintiff testified she sold some ponies which belonged to her and her husband and borrowed some money from relatives and friends and used that money to pay the nurses; that she had repaid the money which she borrowed, from her own earnings after her husband's death; that the $586 which she paid the hospital came to her from the sale of some livestock and from insurance money payable to herself; that the $533 which she paid on the funeral expenses was derived from the sale of beans raised on the farm the year following the death of her husband. Plaintiff further testified that she and her husband had a small bank account and that her husband gave her his pay check which she used to pay the bills and buy the groceries and the balance was left in the bank. She further stated that all the moneys used to discharge or apply on these several bills belonged to her; that she had made the payments shown and that she recognized that the discharge of the balance due upon these several items was her individual obligation. It was stipulated that these several items and charges upon which this judgment is based were the reasonable, usual and customary charges for such services and under our statute

413

these items were all family expenses and there is no merit in appellant's claim that the judgment is excessive.

It is further insisted by appellant that the court erred in giving three instructions tendered by the plaintiff. The abstract prepared by counsel for appellant shows that after the completion of the introduction of the evidence there was a conference on instructions and the abstract recites, that at this conference "defendant withdrew his tendered instructions numbered 1, 2, 4 and 16. Plaintiff objected to defendant's instructions numbered 3, 6, 7, 8, 9, 10, 11, 12 and 15. Defendant's instruction number 15 was refused and all of the other of plaintiff's objections were overruled. Defendant objected to plaintiff's instructions numbered 2, 3, 4, 5, 6, 9, 10, 15, 16, 17, 18, 19, 20, 21 and 22. Plaintiff's instructions numbered 2, 4, 5, 10, 15, 16, 18, 19 and 21 were refused and all of the other of defendant's objections were overruled. Plaintiff's instructions numbered 1, 7, 8, 11, 12, 13, 14, 23 and 24 were not objected to by defendant and were given. Defendant's instructions numbered 5, 13, 14 and 17 were not objected to by the plaintiff and were given."

What objections, if any, were made to plaintiff's instructions 17, 20 and 22 at the conference does not appear. In Onderisin v. Elgin J. and E. Ry. Co., 20 Ill.App.2d 73 at pp. 77–78 this court said: "The purpose of the conference is to afford counsel an opportunity to object to or correct erroneous instructions. As officers of the court, counsel have a duty to cooperate with the trial judge to the end that the jury may be properly instructed. Enlightened trial practice does not permit counsel under the guise of trial strategy to sit idly by and permit instructions to be given the jury without specific objection and then be given the advantage of predicating error thereon by urging the error for the first time in a post-trial motion."

414

In the light of the record in the instant case we do not believe that appellant is in a position to insist upon any error in the giving of these three instructions.

The record in the instant case discloses that the plaintiff in her initial pleading took the position that contributory negligence, if any, of her husband would not defeat a recovery by her. She claimed a tortious breach of defendant's duty to her and in her complaint she alleged her own exercise of due care. To this complaint defendant filed a motion to dismiss on the ground that the wrongful death action brought by plaintiff in her representative capacity as administrator of her husband's estate was pending and undisposed of and that the Family Expense Statute did not create a cause of action of the type plaintiff sought to assert. This motion was denied on December 20, 1956. Subsequently defendant filed another motion to dismiss and in that motion, in addition to other grounds, stated the complaint failed to show that plaintiff's husband was in the exercise of due care for his own safety at and just before the occurrence of the collision referred to in the complaint. This second motion by defendant was stricken on motion of plaintiff and defendant answered and set up as a separate defense that the husband of plaintiff was, at and just before the accident in question, himself guilty of negligence which contributed directly and proximately to the collision in question.

Counsel for appellant now insists that the complaint is fatally defective in that it is not alleged therein that decedent was in the exercise of due care for his own safety before and at the time the collision occurred, and therefore the trial court erred in refusing defendant's peremptory instructions at the close of plaintiff's evidence, at the close of all the evidence and in overruling defendant's post-trial motion in arrest of judgment. In support of this contention counsel cite Calu-

met Iron and Steel Co. v. Martin, 115 Ill. 358. What that case held was that in order for a person to recover for injuries from negligence it must be alleged and proved that the party injured, was, at the time he was injured, observing due or ordinary care for his own safety. The party injured in the instant case was the plaintiff and the initial complaint contained the necessary averments as to her due care. The subsequent pleadings, however, raised the issue as to the due care of decedent and that issue, whether decedent was or was not in the exercise of due care and caution for his own safety just before and at the time of the collision was submitted to the jury under proper instructions of the court and the jury, by returning the verdict it did, answered this question and found not only that plaintiff but also decedent were in the exercise of due care and caution before and at the time of the collision.

■ In the instant case it is unnecessary for us to determine whether the initial complaint should have contained the averment which appellant now insists that the absence thereof, makes it fatally defective. The record shows that all instructions tendered by the plaintiff in accordance with the theory upon which the complaint was drawn were refused and that the court gave at least four instructions to the effect that a not guilty verdict should be returned unless plaintiff established that decedent was free from contributory negligence. Upon this record any defect in the pleadings was cured by the verdict. (Steward v. Bartley, 5 Ill.App.2d 208; Carson-Payson Co. v. Peoria Terrazzo Co., 288 Ill.App. 583; Baltimore and O. Sw. Ry. Co. v. Then, 159 Ill. 535; Chicago and A. R. Co. v. Clausen, 173 Ill. 100.)

We have read the evidence as abstracted and examined the photographs in the record which reflect the scene of the occurrence in question and the topography of the surrounding country. There is little conflict in

the evidence. Plaintiff lived with her husband and children some 24 miles from the place of his employment in Peoria. August 1, 1955 was a clear day and shortly prior to 7 o'clock on the morning of that day the husband left his home on his motorcycle to go to work. His course took him through the village of Lancaster and as he proceeded on the highway referred to in the record as Lancaster Road the cap of his gas tank fell off. He recovered it and proceeded in an easterly direction along this black top road and had travelled about 8 miles from his home to the point of collision. Defendant had entered the Lancaster Road a mile and a quarter due east of where the collision occurred. He was driving his one-ton Studebaker farm truck and proceeded in a westerly direction along Lancaster road to an entrance on the south side of the highway to a field of beans. According to his testimony he drove in his own traffic lane and when several hundred feet east of the opening he intended to use to enter his bean field, he put his left arm out of the window of his car to indicate a left turn and kept his arm out the window until he had reached a point between 50 and 100 feet east of the point of collision. He then slowed down, withdrew his arm from the window and started to turn left. He looked but did not see any vehicle in front of him coming toward him and a view in his rear view mirror disclosed no one to his rear. He had shifted into low gear and was moving at a speed not to exceed 5 miles per hour when he started to make his left turn. He was then looking straight ahead and when his truck had cleared about one-half of the east bound traffic lane he felt a slight bump, heard a noise and from his rear view mirror he saw a motorcycle skidding on its side and observed the body of decedent rolling on the blacktop. The road was dry and an examination of the truck after the accident disclosed that the motorcycle struck the right side of

417

defendant's truck between fifteen inches and two feet from its right rear corner. After the collision one witness testified that decedent said that at the time he was driving at least 70 miles per hour. Grant Bohanan was the first person to arrive at the scene after the accident and Henry Clausen came immediately thereafter and was with decedent until he was removed by the ambulance and he testified that he never heard the injured man say anything about the accident or how it happened. Julius Schwin, Chet Sprague and Don Clausen arrived soon after the arrival of Henry Clausen. He, Don Clausen, on direct examination corroborated defendant's testimony that the injured man said he was going at least 70 miles per hour but on pre-trial deposition he stated that someone in the crowd that had assembled after the accident made that statement but he didn't know who it was. Chet Sprague had died before the trial and Julius Schwin, was not called as a witness.

The evidence is further that both parties involved in the collision were familiar with the area and road. The road runs due east and west but there is a small hill which would obstruct the visibility of defendant as he proceeded west. There are two entrances from this road to defendant's bean field and the entrance defendant intended to use was at the eastern end of the field and 564 feet east of the other entrance which was at or near the center of the field at the top of the hill.

Plaintiff testified that she first met defendant at the hospital on the evening of the day the accident occurred and that he there stated to her that he did not see her husband; that he was sorry the accident happened; that it was his fault and that he was to blame. Defendant's version of this conversation was that he told plaintiff he did not see her husband prior to the time the motorcycle hit the truck; that he was sorry

that it had to happen but he denied ever stating that he was to blame or that it was his fault.

■ It is undisputed that decedent was at all times proceeding in his proper traffic lane. If he saw defendant's truck before defendant started to make his left turn he had a right to assume that the truck would continue in its lane of traffic and not make a left turn across his traffic lane. Whether he, under all the circumstances disclosed by the evidence, was in the exercise of due care and whether defendant was guilty of negligence upon the occasion in question were questions of fact for the jury to pass upon and were submitted to the jury under proper instructions. We are unable to say that the jury should have reached an opposite conclusion under all facts and circumstances disclosed by this record.

Under the pleadings in this case the question whether the prior judgment in the action brought by the administrator of decedent's estate under the Injuries Act bars plaintiff from maintaining this action is not presented for our determination. Counsel for appellant concede that this point was not raised in the trial court and therefore cannot be raised on this appeal.

Appellant was not denied any substantial right when the trial court sustained objections by plaintiff to seven interrogatories submitted to plaintiff under Supreme Court Rule 19–11. The record shows six of the thirteen interrogatories were answered and the questions not answered inquired of plaintiff whether decedent had any health or accident insurance, whether any Blue Shield or Blue Cross benefits had been paid decedent as a result of the accident and whether any death benefits had been paid under the Social Security Act. These were immaterial matters and the record discloses that defendant was in no way prejudiced upon the trial by the court's ruling.

419

We find no reversible error in this record and the judgment of the trial court is therefore affirmed.

Judgment affirmed.

SPIVEY, P. J. and McNEAL, J., concur.